O. L. ANTHONY v. E. M. NORTON.

No. 11138.

PARENT AND CHILD—*Damages for Seduction—Pleading and Proof.* The common-law rule in actions by a parent for damages for the seduction of his daughter, which required him to sue in the capacity of a master for the loss of her services as a servant, although in fact permitting a recovery by him in his parental relation, was the rule of a legal fiction which no longer obtains under the reformed procedure, because of the abolition by the code of fictions in pleading, and its requirement to state the actual facts in controversy.

Error from Coffey district court; W. A. RANDOLPH, judge. Opinion filed March 11, 1899. Affirmed.

*Madden Bros.*, for plaintiff in error.

*G. E. Manchester*, and *Lamb & Hogueland*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by Mrs. E. M. Norton, a widow, against O. L. Anthony, for damages for the seduction of her daughter, Turie Norton. Besides a denial of the imputed act, the defense was that the daughter was of full age, and did not, as to her mother, stand in the relation of a servant to a mistress, and that no loss of service to the mother, as mistress, had resulted from the alleged wrong. The daughter was about twenty-five years old at the time of the seduction charged, and was clerking in a store. At and before that time she lived with her mother as a part of the family, and occasionally performed some slight household services. The court, among other matters of law, instructed the jury as follows:

"If you find from the evidence that the plaintiff is a widow, and the mother of Turie Norton, whom it is alleged that the defendant seduced, and that, at the time of said seduction, the said Turie Norton lived with her mother and performed service for her (and you are instructed that the performance of any slight service is sufficient to satisfy the law in that regard), then plaintiff will be entitled to recover, if you find that the seduction was accomplished as alleged. That you may find that the said Turie Norton was in the service of the plaintiff, you need not find that a contract existed between them for such service. It will be sufficient if she lived with her mother when the seduction occurred, and took part in the housework. And such service need not be paid for, and no pay need be promised or expected."

A request made by the defendant for the following instruction was refused:

"I instruct you that the mere relation of mother and daughter will not permit a recovery by the former for the seduction of the latter."

The instruction given is in accord with the almost unanimous voice of the courts, and if it were the only one to be considered we should have no hesitation in approving it; but the request preferred by the defendant and refused by the court brings before us the question as to whether an action for seduction can be maintained upon the mere relation of parent and daughter alone, especially where, as in this case, the daughter is of age and lives with her parent and constitutes a part of the family. Upon this question the holdings of the courts are uniform to the effect that an action for the seduction of a daughter, brought in the parental capacity alone, is not maintainable, except as allowed by statute. At common law the action is maintainable by the parent only in the capacity of master or mistress, and it must be in form an action for loss of the daughter's services as a servant. That the rules of the law should thus degrade the injured parent's right of action to one of mere compensation for the impaired ability of the daughter to perform labor, and for the recovery of the expenses incident to such sickness as results from the wrong done, has been, throughout the course of judicial decision, a matter of regret among the judges. So grievously has this reproach upon the law been felt, that the courts quite a time ago began to sanction a wide latitude of evidence as to damages in such actions, until now the rule has become firmly established that, notwithstanding the action must be in form for loss of services and expenses incurred in sickness, compensatory damages for parental, and even general, family shame and mortification may be recovered, together with an additional punitory sum for the flagrant wrong committed by the seducer. It will be profitable at this point to illustrate by quotations

from the authorities the present liberal holdings of the courts upon this subject, and to note the extreme departure of the rule of proof from the rule of pleading, and also to note the lament of the judges over the arbitrary and technical theory which compelled the parent to disguise his action in the false and abhorrent form of a master's suit for loss of services.

Mr. Sedgwick, in his work on Damages (8th ed., vol. 2, § 471), says: "The common-law action of case, by the father or master, for seducing a daughter or female servant, is one of a peculiar character. It is eminently a legal fiction; the demand is based upon the mere loss of service; but the damages are very much at large, and in the discretion of the jury." Following the above statements the author briefly traces the evolution of the rule of damages from one of mere compensation to the master for loss of services to one of compensation for parental mortification, anguish, and violated honor.

In Sutherland on Damages (vol. 3, p. 735), it is said:

"At common law this action rests on the relation of master and servant, and proceeds in form for loss of service. Trespass *vi et armis* is deemed the proper action where the servant resides with the master or parent; case may also be brought where the injury is not committed with force or where the servant is only constructively in the master's service. Slight evidence will establish sufficiently the relation, and the extent of the loss of service is not the measure of damages. The allegations and proof on these points are almost an unmeaning formula — an obeisance to a shadow of the past — to reach the actual grievance. The action in reality is to afford redress for the injury done to the parent or other near relative or person standing *in loco parentis* for the dishonor and degradation suffered by the family in consequence of the seduction. And large

damages, which the court will seldom relieve against, are recoverable, both for recompense to the plaintiff and punishment to the defendant.   Caton, J., said: 'Technically the ground of recovery is the loss of the services of the daughter, and the rule of the books seems to be that the father must prove some service in order to entitle him to maintain the action.   This is nominally the ground on which the plaintiff's right of action rests, while, practically, the right to recover rests on far higher grounds ; that is, the relation of parent and child, or guardian and ward, or husband and wife, as well as that of master and servant ; and it seems almost beneath the dignity of the law to resort to a sort of subterfuge to give the father a right of action which is widely different from that for which he is really allowed to recover damages.   But the law may still require proof of service, or at least the right to service when the child is a minor ; but this, as well as any other fact, may be proved by circumstances sufficient in themselves to satisfy the jury that the party seduced did actually render service to the plaintiff, and the most trivial service has always been held sufficient.' (*Doyle v. Jessup*, 29 Ill. 462.)   Even in England, where stricter proof of service is required, Blackburn, J., said : 'In effect, the damages are given to plaintiff as standing in the relation of parent ; and the action has at present no reference to the relation of master and servant, beyond the mere technical point on which the action is founded.' (*Terry v. Hutchinson*, L. R. 3 Q. B. 602.)   This is according to the general current of authority.   While the courts adhere so far to the original distinctive character of the action as to require proof that the seduced female was in the service of the plaintiff at the time of the seduction, they do not require very strict proof ; very slight evidence of loss of service suffices in favor of one standing *in loco parentis*, and affected by the graver consequences of the seduction.   The actual loss sustained by the plaintiff, through the diminished ability of his daughter, relative or ward to yield him personal service, as well as the servile position of the supposed servant herself in the family of her protector, is ordinarily

little more than a mere fiction. It is one of those cases in which an action devised for one purpose has been found to serve a different one, by the aid of the discretion which courts have assumed in instructing the jury, and the readiness of the jury to render substantial justice by their verdict, where the forms of law imposed by the instructions of the court admit of their so doing.''

In Pollock on Torts, 201, it is said :

'' The capricious working of the action for seduction in modern practice has often been the subject of censure. Thus, Sergeant Manning wrote forty years ago : ' The *quasi* fiction of *servitium amisit* affords protection to the rich man whose daughter occasionally makes his tea, but leaves without redress the poor man whose child is sent unprotected to earn her bread amongst strangers.' All devices for obtaining what is virtually a new remedy by straining old forms and ideas beyond their original intention are liable to this kind of inconvenience. It has been truly said that the enforcement of a substantially just claim ' ought not to depend on a mere fiction over which the courts possess no control.' ''

In *Phelin v. Kenderdine*, 20 Pa. St. 361, the court says :

''Although the action by a parent for the seduction of his daughter has its technical foundation in the loss of his daughter's services, it is well settled that proof of the relation of master and servant, and of the loss of service by means of the wrongful act of the defendant, has relation only to the form of the remedy, and that the action being sustained in point of form by the introduction of these technical elements, the damages may be given as a compensation to the plaintiff, not only for the loss of service but also for ' all that the plaintiff can feel from the nature of the injury.' ''

In *Badgley v. Decker*, 44 Barb. 588, the court says :

'' The rule is still adhered to with us, that the loss of service is the legal gravamen of the action .(*Bartley*

*v. Rightmyer*, 4 Comst. 38), but to accommodate the action to cases where the daughter rendered no service, a presumed or a fictitious service is resorted to as the gravamen. (3 Burr. 1893, 2 D. & E. 166, 168; 7 Carr. & Payne, 528; 9 John. 389; 2 Wend. 459; 21 id. 79–82.)

"All the modern cases hold that the legal gravamen of the action is not the real gravamen, as is apparent when we come to consider the rule of damages recognized in the action, and judges have not unfrequently spoken of the action as resting upon a fiction. . . . The real gravamen of the action is not the loss of service; that is a very small item in the measure of damages. The loss of service in many cases could not be considered anything in reality, and often when the least service is performed the highest damages are given. The real gravamen of the action is the mortification and disgrace of the family and the wounded feelings of the plaintiff."

In *Davidson v. Abbott*, 52 Vt. 570, the court says:

" The action in form is to recover damages for loss of service; but it has become well settled for a century in England and this country that the loss of service is slight and nominal in most cases, and the recovery is had essentially for wounded feelings, dishonor, and disgrace."

In *Riddle v. McGinnis*, 22 W. Va. 271, the court says:

" While at common law the father and master was obliged to allege and prove the loss of service, however trivial or valueless, as the foundation of the recovery, yet it was regarded only as the foundation, for the courts have always treated the relation of master and servant and the loss of service as innocent fictions which merely served to give the court jurisdiction, while the measure of the plaintiff's damages was not merely the actual value of the service lost, but compensation for the shame, disgrace and anguish suffered by the father in the defilement and ruin of his daughter. These elements now enter into and generally constitute the real measure of damages, while

the jury in estimating them must almost necessarily be influenced and controlled by the position of the parties in society, and by all the other circumstances surrounding each particular case.''

Many more quotations like those above could be made from text-writers and reported decisions. The views of all legal authorities upon the subject are to the effect that the rule which requires a parent suing for the seduction of a daughter to plead loss of her services as his servant, but which obligates him to only nominal proof of the cause of the action stated, is an empty and senseless legal fiction, a pretense and a sham, which does discredit to the law, and with which it is highly desirable to dispense.

What seems to us a satisfactory definition of a fiction of law, though one admittedly broad, is that given in Maine's Ancient Law, page 25. It is : ''Any assumption which conceals or affects to conceal the fact that a rule of law has undergone alteration, its letter remaining unchanged, its operation being modified. . . . The fact is that the law has been wholly changed. The fiction is that it remains what it always was.'' The substance of all the definitions of a legal fiction is that it is a pretense that the law as to a particular matter is different from what it really is.

The legal fiction in actions by a parent for seduction is that he has lost the services of his daughter and has been subjected to expense on her account, wherefore he sues for such loss and expense, and for them alone. The fiction assumes his right to recover for these and these alone. The fact is that he has lost no services and has been subjected to no expense, but the law is that, notwithstanding his lack of loss and expense, he may nevertheless recover for the wounds to his parental feelings, and may

mulct the seducer in punitive damages also. We say the law is that he may recover notwithstanding his lack of loss in his capacity as master. The courts make a pretense of holding him to proof of such loss, and make a pretense of withholding relief if he fails to make the proof; but it is a pretense only. Proof of the very slightest kind of service will suffice. The service proved need be nothing more than nominal. It need not be actual or beneficial; and many of the courts hold that where the daughter was not actually in the service of the parent she nevertheless was, if a minor, constructively in his service, and that such constructive service was sufficient to uphold the right of action. It is a shameful pretense to hold that a daughter whose labors, for instance, merely consist in pouring the tea at her father's table and doing the honors of his household to his guests, is in his service as a servant, and that he may recover damages because of the loss of such labors through her seduction.

Many of the courts have deplored the lack of legislation to enable them to dispense with the fiction in question, so as to allow them to bottom cases in theory as well as in fact upon the actual and meritorious ground upon which the damages are really awarded. If by this is meant legislation which in express terms abrogates the fiction of the relation of master and servant, we deny its necessity in this and other states which have adopted the reformed code of procedure. The code was devised for the very purpose of dispensing with legal fictions and antiquated forms of action. Its spirit in this respect can be illustrated by a score or more of its provisions. Out of them one general rule of reform is collectible, and that is that the actual facts from which the claimed right of action is deducible must be stated. Nay more, it is

even expressed in some of the sections of the code. "The distinction between actions at law and suits in equity and the forms of all such actions and suits heretofore existing are abolished." (§ 6.) "There can be no feigned issues." (§ 7.) "The rules of pleading heretofore existing in civil actions are abolished." (§ 85.) "The petition must contain a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition." (§ 87.) "All fictions in pleadings are abolished." (§ 116.)

If in fact a right of action is given to the parent as such for the seduction of the daughter; if in fact the injury done is to the parent in that relation; if in law the courts take to themselves the right to probe beneath the thin veneering of the form of the action as one for the loss of services, in order to reach the heart and core of the controversy and give damages for the actual injury committed — if these things are allowed and done, it cannot be that the liberal rules of the code still require conformity to the fictitious and embarrassing formulas of the common law. Not only was it the design of the code to simplify the rules of pleading by reducing to unity all the various forms of action existing at common law and requiring the parties to state the actual facts of the controversy, but it contemplated the existence of the modern and enlarged ideas of justice as to matters of substantive right which had begun to prevail. To furnish a better medium for the working out of the newer and more equitable thought was equally its design.

No relation in life has been more visibly affected by the humanizing influence of latter-day concepts of justice than has the domestic one. Originally the child was in the fullest sense the slave of its father. Indeed, the origin of slavery, according to the view of

a most learned and deep-searching historian, was in
the family circle ; the child was born into slavery to
its sire. . (Ward's Ancient Lowly, ch. 2–3.)⁄ In the
course of time the legalized state of the child passed
from that of a slave to that of a servant of the one who
had begotten it.  Now it holds, in general estimation
at least, if not in law, a quite nearly coordinate posi-
tion in the family.  As long as its minority lasts it is
under the guardianship and tutelage of its parents,
but it is no longer in fact, nor in legal theory, their
servant, and when, it being a daughter, suit is brought
on account of its seduction, such suit is not in fact
founded upon the idea of service lost, but upon the
idea of parental affection wounded, parental anguish
endured, and parental liability for care and nurture
increased.  Damages, therefore, in respect to the vio-
lated parental relation are the facts which the code or-
dains shall be stated in the petition, and the pretense of
services lost to the parent as a master is the legal fic-
tion of pleading which the code ordains shall be abol-
ished.  If necessity ever existed for cloaking the real
cause of action under the nominal disguise of another
one it no longer exists, and we hold accordingly.  In
this state a parent may maintain an action for the se-
duction of the daughter without averment or proof of
loss of services or expenses of sickness.

A question subsidiary or incidental to the one above
discussed now arises.  In this case the daughter was
of full age.  The law had emancipated her from the
guardianship and control of her mother, and, so far
as legal liability is concerned, the mother was ab-
solved from responsibility for the acts and conduct of
the daughter.  May the mother, therefore, maintain
the action?  As before stated, the daughter constituted
in fact a part of the mother's family.  The mother
was the head of that family, and was charged with

that moral responsibility for the virtue and orderly conduct of its various members which devolves upon the head of a household. The purity and rectitude of behavior of those within the domestic circle were in an especial manner the objects of her solicitude and care. The law, therefore, will not deny compensation to her for the invasion of her home by the ruthless destroyer of its peace and happiness simply because in law she could no longer command the services of her daughter. The mere fact of the legal emancipation of the daughter from parental control has never been made a test of the right to maintain the action for seduction. When the right to maintain it was founded upon the legal fiction of loss of services the cases divided themselves into two classes— one where the daughter was a minor, in which instance the right to the service was legally presumed; the other where the daughter was of age, in which instance proof of a contract of service was required, or in lieu thereof proof of facts from which it could be inferred. The right of action was given in the last-mentioned case as well as in the former, and the courts, although adhering in the last case, as well as in the former, to the fiction of the loss of services, nevertheless gave damages in vindication of the parental right and in melioration of outraged parental feelings.

In *Badgley v. Decker*, 44 Barb. 577, and in *Davidson v. Abbott*, 52 Vt. 767, the daughters were twenty-five and thirty-one years, respectively, at the times of their seduction. The actions were held maintainable in these cases, and in the following ones they were likewise upheld, although the females had passed the period of minority: *Sutton v. Huffman*, 32 N. J. (Law) 58; *Wert v. Strouse*, 38 id. 185; *Lamb v. Taylor*, 67 Md. 85, 8 Atl. 760; *Moran v. Dawes*, 4 Cow. 412; *Lipe v.*

*Eisenlerd,* 32 N. Y. 229 ; *Villepigue v. Shuler,* 3 Strob. (Law) 462 ; *Long v. Keigtley,* 11 Irish Law Times, 77. Many other like cases might be cited, but these are sufficient to show that the minority of the daughter has never been held essential to the right of recovery by the parent.

There exists no reason for distinguishing between cases of minority and of full age of the daughter, and granting a recovery in the former while denying it in the latter, merely because the legal fiction of services lost, upon which they were formerly both prosecuted, has been cleared out of the way, and the right of recovery placed in law as well as in fact upon its real ground. There is no magic in the passing of a daughter's eighteenth birthday anniversary to relieve against parental solicitude and care, or parental anguish over her fall from virtue. At what time in the advancing age of a daughter the feelings of parental mortification over such fall become sufficiently dulled and the sense of parental responsibility sufficiently weakened to reduce the damages to a nominal sum or to deny them altogether we need not concern ourselves. The law heretofore has set no time for the passing of parental feelings as to such matters into a condition of indifference, and we need not speculate as to it. Each case will depend upon its own particular facts and as to such facts the jury is the judge.

Two other claims of error are made. They are founded upon the court's instructions and its refusal of requests for instructions. One of them relates to the meaning of the word "seduction" and raises a question as to its legal definition ; the other relates to the measure of damages recoverable. Both of them, however, are unfounded, and the judgment of the court below will be affirmed.