### SNIDER v. NEWELL.

(Filed May 12, 1903.)

1. PLEADINGS—*Demurrer—Evidence—Seduction.*

    A demurrer to the evidence of the plaintiff admits the truth thereof and any reasonable inference that may be drawn therefrom.

2. SEDUCTION—*Evidence—Loss of Services—Damages—The Code, Sec. 233, Subsec. 2.*

    It is not necessary in order for a parent to maintain an action for the seduction of his daughter that he show actual loss of services.

    Concurring opinion by CLARK, C. J.

ACTION by J. F. Snider against W. B. Newell, heard by Judge *Thos. J. Shaw* and a jury, at March Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment of non-suit, the plaintiff appealed.

*Jones & Tillett,* for the plaintiff.
*Burwell & Cansler,* for the defendant.

CONNOR, J. This is an action prosecuted by the plaintiff for the recovery of damages alleged to have been sustained by reason of the seduction by the defendant, of his daughter, whereby he "lost the services of his said daughter, and the reputation of his family was thereby greatly injured and he suffered great mental anguish and humiliation." The defendant admitted that he had illicit carnal intercourse with the daughter but denied that the plaintiff lost her services thereby, or suffered otherwise. The plaintiff introduced evidence tending to show that his daughter, when about 18 years of age, was seduced and debauched by the defendant; that he had repeated acts of sexual intercourse with her in the plaintiff's house in which his daughter resided as one of his family; that such intercourse was had at night, the defendant going to the room of the daughter entering through her bed

room window; that the plaintiff knew nothing of the defendant's conduct until it had continued about a year, when he charged the defendant with it, when he admitted the truth of the charge. The plaintiff testified that he was greatly shocked; that the matter greatly pressed on his mind and he thought they were all disgraced; that the daughter was, prior to the sexual intercourse with the defendant, chaste, pure and virtuous; that defendant is a married man. The defendant introduced no testimony but moved the court to dismiss the action as upon a non-suit. The court allowed the motion and the plaintiff excepted and appealed.

The judgment of his Honor is based upon the conclusion of law that the plaintiff had not shown any loss of service or any diminution of the daughter's capacity to serve him, and could not for the other injuries alleged maintain the action. The demurrer to the evidence admits the truth of the plaintiff's testimony, together with every reasonable inference to be drawn therefrom most favorable to the plaintiff, but presents the question whether the plaintiff's testimony is sufficient to base a finding of such loss of service, as is necessary to maintain the action.

The plaintiff has alleged a loss of service, mental anguish and mortification. We have been unable to find, after a very careful and diligent search, a case in England or America in which the declaration or complaint has failed to allege loss of service. The action at common law was trespass *vi et armis,* or trespass on the case *per quod servitium amisit. Briggs v. Evans,* 27 N. C., 16. The gravamen of the action was that the daughter was the servant of the plaintiff and that by her seduction he lost her services. Taylor, C. J., in *McClure v. Miller,* 11 N. C., 133, says: "It is characterized by a sensible writer as one of the 'quaintest fictions' in the world, that satisfaction can only be come at by the father's bringing the action against the seducer for the loss of his

daughter's services during her pregnancy and nurturing."
In *Kinney v. Laughenour,* 89 N. C., 365, it is said: "The
action for seduction does not grow out of the relation of pa-
rent and child, but that of master and servant and the loss
of services. It is true that this a *fiction of the law."* In
*Hood v. Sudderth,* 111 N. C., 215, Clark, J., said *arguendo:*
"It is true that at common law an action for seduction could
technically only be brought by a father, master or employer,
and that damages were alleged *per quod servitium amisit*
for value of services lost; this though in fact no services
were lost, and even when a woman was of full age and the
father was not entitled to recover services of any one else.
It was well understood that this was a mere fiction, and dam-
ages were awarded for wrong and injury done her." The
question decided in that case does not arise upon this record.
In *Scarlett v. Norwood,* 115 N. C., 284, there was an allega-
tion of loss of service, seduction, etc., "thereby damaging said
plaintiff, and for medical care, nursing, attendance, etc."
The action was brought by the father. In *Abbott v. Han-
cock,* 123 N. C., 99, the plaintiff alleged that her daughter
was in her actual service, residing with her in New Bern and
being under 21 years old and unmarried. In *Willeford v.
Bailey,* at this term, there was an allegation of loss of service,
abduction, etc., the action being brought by the father, the
girl being under 21 years of age. Nash, J., in *Briggs v.
Evans,* 27 N. C., 16, says: "It is but a figment of the law
to open the door for the redress of his injury. It is the sub-
stratum on which the action is built. . . . He comes into
court as a master; he goes before the jury as a father." The
case of *Anthony v. Norton,* 60 Kan., 341 (72 Am. St. Rep.,
360); 44 L. R. A., 757, unmistakably holds that "the action
could be maintained on the bare relation of parent and child
alone."

It is one of the most striking illustrations of the conser-

vatism of the profession and the bench that although there has been a constant protest against the necessity for resorting to this "quaintest fiction" or legal "figment", the courts have not felt justified in abandoning it. We find most careful and accurate counsel in all of the cases alleging loss of service. Sir Frederick Pollock, in his work on Torts, pp. 222, 223, says: "There seems, in short, no reason why this class of wrongs (injuries in family relations) should not be treated by the common law in a fairly simple and rational manner, and with results generally not much unlike those we actually find, only free from the anomalies and injustice which flow from disguising real analogies under transparent but cumbrous fictions. But as a matter of history (and pretty modern history) the development of the law has been strangely halting and one-sided. Starting from the particular case of a hired servant, the authorities have dealt with other relations not by openly treating them as analagous in principle, but by importing into them the fiction of actual service, with the result that in the class of cases most prominent in modern practice, namely, actions brought by a parent (or person in *loco parentis*) for the seduction of a daughter, the test of the plaintiff's right has come to be, not whether he has been injured as the head of the family, but whether he can make out a constructive 'loss of service'." He discusses the question with his usual clearness and force, saying: "The capricious working of the action for seduction in modern practice has often been the subject of censure. Thus, Serjeant Manning wrote more than 50 years ago: 'The *quasi* fiction of *servitium amisit* affords protection to the rich man whose daughter occasionally makes his tea, but leaves without redress the poor man whose child is sent unprotected to earn her bread among strangers'." While in a certain sense "fictions have had their day" and are not to be permitted to hamper the courts in the administration of justice, we must be

careful that we permit not ourselves, because we live in days of Codes of Civil Procedure, to conceive that we may altogether break away from the wisdom and experience of the past.    As was said by the great Chief Justice Pearson in regard to estoppel: "According to my Lord Coke, an estoppel is that which concludes and 'shuts a man's mouth from speaking the truth.' With this forbidding introduction, a principle is announced which lies at the foundation of all fair dealing between man and man, and without which it would be impossible to administer the law as a system." *Armfield v. Moore,* 44 N. C., 161.    Sir Henry Maine in his great work on Ancient Law tells us that a legal fiction is "a rude device absolutely necessary in early stages of society; but fictions have had their day." He says "It is not difficult to see why fictions in all their forms are particularly congenial to the infancy of society. They satisfy the desire for improvement, which is not quite wanting, at the same time that they do not offend the superstitious disrelish for change which is always present. At a particular stage of social progress they are invaluable expedients for overcoming the rigidity of law, and indeed, without one of them, the fiction of adoption which permits the family tie to be artificially created, it is difficult to understand how society would ever have escaped from its swaddling clothes and taken its first step towards civilization. . . . . . To revile them as merely fraudulent is to betray ignorance of their peculiar office in the historical development of the law.    But at the same time it would be equally foolish to argue with those theorists who, discovering that fictions have had their uses, argue that they ought to be stereotyped in our system."    PP. 25, 26.    He wisely concludes that it will be necessary to "prune them away".

However interesting and inviting this field may be, it is hardly proper to investigate it in the decision of this case. We are not called upon to say more than that courts should

move forward and yet cautiously in dispensing with even "fictions". We must bear in mind that the law of procedure as well as substantive law is not a thing to be manufactured, but is the result of growth and careful conservative progress. While we find no difficulty in holding that "it is not necessary in order for a parent to maintain an action for the seduction of his daughter that he prove actual services or the loss thereof." It is sufficient that it be shown that the child is a daughter of the person suing, and residing in his family as such, or is elsewhere with his consent and approval. Rogers on Domestic Relations, Sec. 839.

We carefully refrain from advancing further than is necessary in this case. It would not require any considerable foresight to see a large yielding of suits for seduction brought by collateral relations upon the suggestion of loss sustained in social position, business relations, mortified sensibilities, etc. We have a striking illustration of this in *Young v. Tel. Co.,* 107 N. C., 370; 9 L. R. A., 669; 22 Am. St. Rep., 883, in which it was held that a husband to whom a message had been sent notifying him of the sickness of his wife, could, in an action for failure to deliver promptly, recover in addition to nominal damages, compensation for mental anguish. Since the decision of that case, we have suits for "compensation for mental anguish" brought by persons of almost every kind and degree of kinship, and we have good reason for thinking that "the end doth not yet appear." It is undoubtedly true that, as we come into a clearer view of social, domestic and business relations with their resulting rights and duties, the courts will guard these relations and protect them by appropriate remedies, both preventive and remedial. In doing so, the principles underlying our jurisprudence must not be violated, or sentimental emotions be made cause of actions; nor must we permit the tenderest and most sacred relations of life to become sources of profit and speculation.

SNIDER *v.* NEWELL.

In the view which we take of this case, the plaintiff was entitled to maintain his action upon his allegation and proof, We find abundant authority, both in and beyond this State, to sustain this conclusion.    In *McDaniel v. Edwards,* 29 N. C., 408; 47 Am. Dec., 331, Ruffin, C. J., says: "When the daughter is living with the father, whether within age or of full age, she is deemed to be his servant for the purposes of this action, in the former case absolutely, and in the latter if she render the smallest assistance in the family, as pouring out tea, milking and the like."    In *Kennedy v. Shea,* 110 Mass., 150, Ames, J., said: "According to numerous decisions of the courts of New York, Pennsylvania and some other States of the Union, this relation is sufficiently proved by the evidence that the daughter was a minor, and that her father had the right of her services."    In *Bartley v. Ritchmier,* 4 N. Y., 38; 53 Am. Dec., 338, Branson, C. J., says: "Since it has been settled that the value of the services actually lost does not constitute the measure of damages when the action is brought by the father, it has been held sufficient for him to show that the daughter was under age and lived in his family at the time of her seduction, without proving that she had been accustomed to render service.    It has been thought enough that the father was entitled to her services and might have required them if he had chosen to do so."    See also notes to this case, 53 Am. Dec., 338.    In *Martin v. Payne.* 9 Johns, 387; 6 Am. Dec., 288, Spencer, J., says: "She was his servant *de jure* though not *de facto* at the time of the injury, and being his servant *de jure* the defendant has done an act which has deprived the father of his daughter's services, and which he might have exacted but for that injury." *Coon v. Moffet,* 3 N. J. Law, 583; 4 Am. Dec., 392.

The English cases are equally as clear upon this point.    In *Fores v. Wilson,* Peaks N. P. Cases, 55, Lord Kenyon held "That there must subsist some relation of master and ser-

vant, yet a very slight relation was sufficient, as it had been determined when daughters of the highest and most opulent families have been seduced, the parent may maintain an action on the *supposed* relation of master and servant, though every one must know that such a child can not be treated as a menial servant." In *Mauder v. Venn,* 1 Moody & M., 323 (22 Com. Law Rep.), it is held that it is not necessary to show any acts of service done by the daughter. It is enough that she lives in the father's family under such circumstances that he has a right to her services. This case is singularly like the case before us. It is said in the course of the plaintiff's proof, a difficulty occurred in making out any acts of service of the daughter. It being, however, proved that the seduction took place while she was residing with the plaintiff and forming a part of his family, Littledale, J., interposed and said that 'the proof of any acts of service was unnecessary; it was sufficient that she was living with her father, forming part of his family and liable to his control and demand; the right to the service is sufficient.' " Judge Cooley thus sums up the law: "The father suing for this injury in the case of a daughter, actually at the time being a member of his household, is entitled to recover in his capacity of actual master for a loss of services consequent upon any diminished ability in the daughter to render service. That an actual loss is suffered under such circumstances the law will conclusively presume, and evidence that the daughter was accustomed to render no service will not be received." Cooley on Torts, p. 221; Pollock on Torts, p. 27.

We thus see that, while the courts have protested against the rule of law requiring the allegation of the fiction upon which the action is based, they have wisely wrought out the substantial remedy by recognition of the relation, with all of its incidents, rights and duties, of parent and child. It is difficult to conceive how a daughter, who has been seduced and

debauched as the testimony in this case shows, can be said not to have had her ability to serve her father diminished; hence, we place our decision upon the allegation and testimony in the record.

His Honor was in error in sustaining the demurrer to the evidence, and the case should have been submitted to the jury under proper instructions.

There must be a

New Trial.

WALKER, J., having been of counsel did not sit on the hearing of this case.

CLARK, C. J., concurring in result. The opinion of the court holds, quoting Rodgers' Domestic Relations, Sec. 839—"It is not necessary in order for a parent to maintain an action for seduction of his daughter, that he prove actual services or the loss thereof." There are numerous authorities to maintain that proposition. It follows therefore that under our Code, Sec. 233 (2), loss of services need not be averred, except when such loss is an element of damages. That section provides that the complaint shall contain "a plain and concise statement of *the facts constituting a cause of action,*" hence none other should be stated. Nothing now needs to be averred which it is not necessary to prove. It can serve no purpose to make an unnecessary or untrue averment in any pleading under The Code and *a fortiori* it can not be a fatal defect to fail to make such averment.

The whole subject is summed up with full citation of authorities in the American & English Encyclopedia in the article "Seduction." It appears therefrom that the real causes of action when brought by a father for the seduction of his daughter are the wrong and injury done him in the ruin of his daughter, his wounded feelings and sense of dishonor, the stain and grief brought upon his family; and the

jury can add exemplary damages as punishment to the defendant. Of course, in addition there can be compensation for loss of services, if any. The matter is thus summed up in a review of many authorities, but is stated in none better than in *Russell v. Chambers,* 31 Minn., 54: "As to the damages the parent may recover the loss of service is a comparatively unimportant part, and he is entitled to recover for his wounded feelings and sense of dishonor, loss of the society of a virtuous daughter, and in short, all that a father can feel from the nature of the loss." In *Lawyer v. Fritcher,* 54 Hun, 591; 7 N. Y. Supp., 912, Landon, J., says: "This artifice is properly termed a legal fiction, the real ground of recovery being for damages for the outrage perpetrated."

So entirely is it an action for punitive damages, for the tort, the wrong and injury and humiliation inflicted, that it is said in *Morgan v. Rose,* 74 Mo., 318: "It is believed that no case can be found in the books where the verdict in an action like this has been set aside upon the sole ground of awarding excessive damages." In *McClure v. Miller,* 11 N. C., 133, it was held that the action was in truth to recover vindictive damages "for the disgrace and degradation" caused by the defendant, and hence abated on the death of the plaintiff (the father), *which would not be the case if it were an action for loss of services.*

In many States, by statute it has been made unnecessary to allege or prove loss of services, when such loss is a fiction (as it is in most cases) and also authorizing the woman to bring the action herself when of age. *Stoudt v. Shepherd,* 73 Mich., 589, and other cases cited in Am. & Eng. Enc., *supra.* In this State and others in which fictions have been abolished by The Code, the same result has been attained thereby. In *Hood v. Sudderth,* 111 N. C., at p. 221, it was held that The Code had abolished "the fiction of lost services in an action for seduction which henceforward became upon 'a plain

statement of the facts constituting a cause of action' in legal construction, an action for exemplary damages. It would be singular, to say the least, to retain the fiction that the action is based on the loss of services and not for the wrong itself, when the Legislature has made the conduct complained of a felony." The same case held also that under another section of The Code (177) the woman, if of age, being the party in interest, can bring the action.

In *Willeford v. Bailey,* at this term, it is again said: "The action is really for the humiliation, the mental suffering, and anguish inflicted by the seducer and for punishment to the seducer." In *Scarlett v. Norwood,* 115 N. C., 285, and *Abbott v. Hancock,* 123 N. C., 99, it was held that the jury can allow the parent "punitive damages for the wrong done him in his affections and the destruction of his household." The action is really based, not on the relation of master and servant, which was a fiction, but on that of parent and child (*Terry v. Hutchinson,* L. R., 3 Q. B., 599) and hence when the father is dead, it could be brought by the mother. *Abbott v. Hancock, supra.* By virtue of the parental relation, there is not necessarily any loss of services, and failure to allege or to prove, if alleged, that insignificant element of damages does not deprive the parent of proving and recovering for the injury really sustained.

When the action is brought by the woman herself, of course there can be no allegation or proof of loss of services by the father. When the female is under age, there are decisions (*Smith v. Richard,* 29 Conn., 232; *McCoy v. Trucks,* 121 Ind., 292; *Stevenson v. Belknap,* 6 Iowa, 97; 71 Am. Dec., 392) which hold that the girl herself may also maintain an action for the injury to herself, the action of the father (or mother) being for the injury to the head of the family upon whom, in public estimation, rests the responsibility for the conduct of the children. In actions by the father (or mother

when the father is dead) it is hence admissible to show in mitigation of damages carelessness in exposing the daughter to the danger (1 Big. Torts, 151) or in bar of the action that he assented or connived at the seduction (Rodgers Dom. Rel., Sec. 839), but the father's conduct in this respect could not be set up in an action brought by the woman herself. Cooley on Torts (2 Ed.), 276. In *Scarlett v. Norwood, supra,* at p. 286, it was left an open question whether the infant daughter might not also bring an action for the injury done to herself, which is something distinct from the wrong and humiliation brought upon the parent.

A fiction is defined as a "false averment on the part of the plaintiff which the defendant is not allowed to traverse, the object being to give the court jurisdiction." Maine Anc. Law. 25 ; Best on Ev., 419, cited by Black Law Dict. "Fiction." As it is "not necessary to prove loss of services" it is not necessary to aver what is not a part of the cause of action, under the reformed procedure which, abolishing fictions and subterfuges, requires to be averred and proved that which is the true ground of the plaintiff's action, and that only. When there has been actual loss of services, the complaint can so allege; but when there has been no real loss thereby, the plaintiff is not required to aver such loss, much less to swear to it in a verified complaint. He should set out the truth, the facts which constitute the real basis of his demand for damages and upon which he expects to obtain a verdict. In *Anthony v. Norton,* 60 Kan., 341 (72 Am. St. Rep., 360) ; 44 L. R. A., 757, Doster, C. J., holds in a very able opinion that, under a statute similar to ours, the courts are no longer driven to resort to the fiction, the subterfuge, that there has been a loss of services when there has been none or it is of imponderable value, and that the action of seduction "can be maintained on the bare relation of parent and child alone." This is straightforward and in accordance with the spirit of

Vol. 132—40

the times, as evinced in our system of legal procedure, under which the real matter in dispute should be clearly and plainly stated, tried and decided, leaving all outworn fictions to sleep in the limbo of things discarded by a practical age. Thus have passed away Richard Roe and John Doe in ejectment, the pretense of goods found in the old action of trover and other like fictions.

Many courts have deplored the "manifest absurdity" as they style it, of basing this action for a great moral, social and personal wrong upon a fictitious allegation that the father is a master who by reason of such wrong has lost the services of his daughter (*Ellington v. Ellington,* 47 Miss., 351; Cooley on Torts, 2d Ed., 275; *Doyle v. Jessup,* 29 Ill., 462, and many other cases) and courts have solemnly sustained verdicts for thousands of dollars when no loss of services whatever has been proved. From that anomaly, our statute and decisions have happily freed us.

In *Doyle v. Jessup, supra,* Caton, J., says: "It is beneath the dignity of the law to resort to a sort of subterfuge to give the father a right of action which is widely different from that for which he is really allowed to recover damages." Sir Frederick Pollock in his work on Torts (6th Ed.), 229, deplores that the English courts had not in the beginning "taken the bolder course, which might have been done without doing violence to any legal principle" of resting this action on its true basis, and quotes with approval Sergeant Manning's statement that the "fiction of loss of services affords protection to the rich man whose daughter occasionally makes his tea, but leaves without redress the poor man whose child is sent unprotected to earn bread among strangers," and adds that the enforcement of a just claim should not depend upon such a mere fiction. The law itself is beholden to deal in truth with things as they are, and not in falsehoods, fictions, evasions or subterfuges, and the real status of this action, un-

der our Code, can not be better summed up than by Chief Justice Doster at p. 367 of the opinion in *Anthony v. Norton, supra* (the whole opinion in which is well worth perusal), as follows: "If necessity ever existed for cloaking the real cause of action under the nominal disguise of another one, it no longer exists, and we hold accordingly. In this State a parent may maintain an action for the seduction of the daughter without averment, or proof, of loss of services or expenses of sickness." This goes straight to the mark like the arrow of Robin Hood on the heath at Ashby de la Zouch. The Kansas statutes cited and relied on by him, Kansas Code, Sec. 6: "There can be no feigned issues," and Kansas Code, Sec. 85, the complaint "must contain a statement of the facts constituting the cause of action, in ordinary and concise language and without repetition," are almost identical, *verbatim* with our Code, Sections 135 and 233 (2). Bouvier Law Dictionary "Fiction" says: "As there is no just reason for resorting to indirection to do that which might be done directly, fictions are rapidly disappearing before the increasing harmony of our jurisprudence. See 4 Bentham Ev., 300; 2 Pothier Ob. (Evans' Ed.), 43." The Constitution and The Code in this State abolished all fictions in legal procedure in 1868. They have been dead thirty-five years. We can not revive them, and there is no need to regret them.