ED. WEATHERS v. HETTIE BALDWIN.

(Filed 5 April, 1922.)

**1. Evidence—Nonsuit—Trials.**

The plaintiff's evidence on defendant's motion as of nonsuit thereon must be taken as true, and so considered, with all reasonable inferences to that effect which may be drawn therefrom.

**2. Negligence—Woman—"Willful Injury"—Intent—Evidence.**

For the arrest for a woman under the provisions of C. S., 768, for "willful injury," etc., an actual intent is not necessary if the defendant's negligence is so gross as to manifest a reckless indifference to the rights of others.

**3. Same—Arrest and Bail—Automobiles—Questions for Jury—Trials— Statutes.**

Evidence tending to show that the defendant in the action, a woman, was driving an automobile near the center of a large and populous town on Sunday, at the time the people were going to church, and with a speed in excess of that allowed by law, and without signal or other warning ran upon the sidewalk where the plaintiff was and struck with the machine and injured him, and apparently gave him no further thought, is sufficient for the jury to find an intent on the defendant's part to have willfully injured the plaintiff, and for the defendant's arrest under the provisions of C. S., 768.

APPEAL by plaintiff from *Daniels, J.,* at September Term, 1921, of DURHAM.

This action was brought by the plaintiff to recover for injuries alleged to have been inflicted upon him by the willful wrong of the defendant in driving her motor car against the plaintiff on the public streets of Apex. Issues were submitted to the jury and verdict returned by them

for $1,250, and judgment entered thereon. At a subsequent term, upon a motion of the defendant to set aside the verdict and judgment, the court refused to do so, but reduced the amount of the judgment to $1,000, and set aside the finding as to willful injury and ordered that an issue as to the injury being willful be submitted to a jury at a subsequent term of the court. The issue was accordingly submitted to the jury and evidence was taken upon the same, and at the close of the evidence the court held that there was no evidence of willful injury and nonsuited the, plaintiff as to that issue.

Ed. Weathers, plaintiff, testified in his own behalf as follows: "My name is Ed. Weathers, and have lived in Durham four or five years. I know where the town of Apex is located. It is located about 20 miles from Durham, and is on the Seaboard Air Line Railway between Raleigh and Hamlet, N. C. I went down to Apex on 9 May, 1920. I was down there on Sunday, and went to, or started to, a funeral to be held at church. Apex is a good-sized town, and has a good many business houses. I was walking on the main street in the business section of the town, and at the intersection of two streets, when an automobile ran into me, driven by the defendant, Hettie Baldwin. At the time I was struck I was on the sidewalk, or the line of the sidewalk at the intersection of two streets. At that time I was going in the direction of the church, and it was 10 or 11 o'clock, I think. I heard a noise at the place I was struck, and just as I turned around to see, the automobile was right on me, and I was knocked down like this (describing manner). The place where I was struck was in the business section, where there are many stores, and I think a bank was on one corner and a drug store on the other. I can hear well, and as I heard the noise I looked around and was immediately struck. The white people were having church meetings, and there were lots of people on the street. The church was just above where I was struck. Hettie Baldwin approached me from the rear, at the rate, in my opinion, of 25 or 30 miles an hour. I was going in a southerly direction, and she was going south in the direction of New Hill. She neither blew her horn or gave any signal of her approach. I do not know how far her car ran after hitting me, but she went some distance and ran into a telegraph pole, breaking her lights and fender. I was knocked down, and learned soon afterwards that I was painfully hurt. I was bruised about the head and body, and was confined in bed for several weeks."

Cross-examination: "The defendant ran into a post after I was struck, and I could not tell why she did. I was raised at or near Apex, and had been there before. I went from Raleigh to Mississippi when young, with an uncle and aunt. I am no preacher, but went to Apex to church. I have been living in Durham since I came back from

WEATHERS v. BALDWIN.

Mississippi. I got to Apex about 10 o'clock, and went there to attend a funeral. I was going down Main Street when I was struck, about 10 o'clock. The main street runs toward New Hill, and I reckon is called Salem Street. The street runs north and south, and another street runs at right angles with it, I reckon. The street that crosses the main street, or Salem Street, runs toward the railroad. I was crossing Main Street, and going along the cross street. I was going toward the railroad before I turned down Main Street, to my right. When I reached Main Street I was going toward New Hill. I was coming down the cross street and was crossing from the bank building over to the next corner, across Main Street. I was struck on the sidewalk after crossing Main Street, and had made two or three steps going in the direction of New Hill. I went right from the bank corner to the other corner where the street crosses, and was struck there, the corner opposite Mr. Olive's house. I do not know whether there is a drug store on the other corner or not. There is a bank on one corner, a drug store, I guess, or brick building, on the other, and Mr. Olive's house on the other. I had crossed the street and was on the sidewalk, somewhere near the Olive residence when I was struck. I do not think the sidewalk was paved. There was no whistle or horn blown. The first I saw or heard of the automobile, it was right on me. I was near enough so that when I looked around I was struck. I looked around. I do not know whether I stooped or not. I fell. I do not know what part of the car struck me. Some colored person helped me up, but I do not know his name. She did not get out of the car, and if she said anything I do not know it. If she asked me whether I was hurt I did not know. I told the colored man I was hurt; I did not say to Mr. Wall or others that I was hurt that I remember. If I saw Messrs. Seamore, Wall or Scott I do not know it. I do not know that they were standing near. I do not remember any white men coming to me at all. None except a big yellow fellow. He carried me to the doctor that day, but he was not at home. He carried me to the church and turned me over to another fellow. I did not go into the church. I did not know where the church was. I lay outside on the grass under the trees. The fellow did not stay with me all the time, but my sister-in-law did."

Redirect examination: "I did not come to Durham until that night. I came on the train and called a physician that night.

"Q. How long was he attending you? A. Several weeks. (Objection; objection sustained. Extent of injury, together with conduct of plaintiff, admitted by the court.)

"Q. What effect did the injury have on you, whether it made you sick or not? (Objection by defendant; objection overruled; defendant excepts.) A. I got sick and spit up blood for a week after I was struck.

I lay in bed and there was a great knot on the back of my head caused by the blow. My bowels were swelled, and my neck was wrenched."

Recross-examination: "I did not tell any one I was not hurt. I called Dr. Strudwick. I do not know how long he attended me. I did not have a doctor in Apex. I have not had the doctor in court."

H. W. Hursey, witness for plaintiff, testified: "I have known Ed. Weathers since he came back from Mississippi. His character is good. I recall the occasion on which he was injured."

The issue came on to be tried by *Daniels, J.* The court held that there was no evidence of willful injury, and nonsuited the plaintiff, whereupon he excepted and appealed.

*J. W. Barbee for plaintiff.*
*R. O. Everett and Percy J. Olive for defendant.*

WALKER, J. We have set forth, in the statement of the case, only the testimony of the plaintiff given in his own behalf, and that of one of his witnesses, as upon a motion to nonsuit the evidence introduced by the plaintiff must be taken as true, and so considered with all reasonable inferences which may be drawn therefrom. *Snider v. Newell,* 132 N. C., 614; *Brittain v. Westhall,* 135 N. C., at 495; *Biles v. R. R.,* 143 N. C., 79. If the testimony is thus construed, the case should have been submitted to a jury to find whether the defendant had not only wrongfully injured the plaintiff, as was done at a former term of the court, but whether she committed not only a wrongful injury, but also a willful injury. C. S., 768, provides: "No woman shall be arrested in any action except for willful injury to person, character, or property."

It would be useless to set out here the numerous definitions of the word "willful" or "willfully," the former being the term used in the statute. It is sufficient to consider and adopt one of the definitions, which will answer for the purpose of this appeal. In *Jones v. Bland,* 182 N. C., 70, at p. 73, the question arose as to what would constitute "willfulness or wantonness," and the Court held it to be "negligence so gross as to manifest a reckless indifference to the rights of another," citing *Everett v. Receivers,* 121 N. C., 519. This, as being one of the definitions of "willful injury" or "willful tort" was accepted and approved in *Ill. Cent. R. Co. v. Leiner,* 202 Ill., 624, and *Cin. etc., R. R. Co. v. Cooper,* 120 Ind., 469. In the latter case the Court held that it was correct to charge the jury as follows: "To establish the charge of willfulness, as set out in the fourth paragraph of the complaint, I instruct you that an actual intent to do the particular injury alleged need not be shown; but if you find from all the evidence that the misconduct of the defendant's servants was such as to evince an utter disregard of

consequences, so as to inflict the injury complained of, this may of itself tend to establish willfulness." The Court said, in this connection, that the instruction not only expressed correctly the rule of law applicable to such cases, but that recklessness, reaching in degree to an utter disregard of consequences, may supply the place of a specific intent. In the case of *Ill. Cent. R. R. Co. v. Leiner, supra,* it was said by the Court that to constitute willful and wanton negligence it is not always necessary to prove that the defendant's servants are actuated by ill-will towards the plaintiff. In *East St. Louis Connecting Railway Co. v. O'Hara,* 150 Ill., 580, it is said: "If it be true, as the evidence tends to show, that the defendant's servants, at the time plaintiff was injured, were running their engine in the dark, without a headlight, or a bell ringing, and at a high and dangerous rate of speed, along a much-frequented street, and where many persons were likely to be passing on their way to the ferry landing, or otherwise, such acts would be liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law to wanton and willful negligence. And it was not necessary, in order to raise an inference of such negligence, to prove that the defendant's servants were actuated by ill-will, directed specifically towards the plaintiff, or should have known that he was in such position as to be likely to be injured."

Thompson on Negligence (vol. 1, sec. 22) thus defines a willful injury: "An entire absence of care for the life, the person, or the property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care, with the consequences of a willful injury." In *Ill. Cent. R. R. Co. v. Leiner, supra,* the Court approved this instruction to the jury: "What is meant by willful and wanton misconduct is such conduct as amounts to an intentional wrong, or of such a reckless character as shows that the person or persons guilty of such misconduct were at the time acting in such a manner as shows that they had an utter disregard for the safety and lives of other persons." See, also, *Tolleson v. So. R. R.,* 80 S. C., 7.

It may be that there is testimony in this case to show an actual intent to willfully commit the injury, but whether this is so or not, there is sufficient evidence of an intent to do so, by inflicting injury recklessly and in total disregard of the rights and safety of others. The defendant, if the evidence be true, was in open and almost defiant violation of the statutes as to the running of automobiles in cities and towns, and her conduct can rightfully be characterized as nothing less than reckless, and as exhibiting no regard whatever for the lives and safety of others who were at the time using the streets, as they had a lawful right to do, at the hour of the morning service in the churches of a large and populous

town. It is hard to conceive how the defendant could think that she would not injure some one on the streets as she really did. But her liability to the defendant depends upon how the jury will view the testimony. She may be right, and it may so appear upon the trial of the issue, but the jury must decide the question at issue.

There was error in the ruling of the court withdrawing the issue from the jury.

New trial.