FRANK LITTLE v. M. C. HOLMES ET·AL.

(Filed 3 June, 1921.)

**Abduction—Actions—Parent and Child—Damages—Loss of Service— Mental Anguish.**

An action will lie in behalf of the father against one who has induced his minor sixteen-year-old daughter to leave her home, against his will, in his absence and against the protest of his wife, who was then present, though with the consent of the daughter; and where the intent and result is marriage, he may recover damages' against the abductor upon sufficient evidence for the loss of his daughter's· services between the time of her abduction and that of her marriage, and for the mental anguish he has sustained, or for either one or both as the case may be.

APPEAL by defendants from *McElroy, J.,* at August Term, 1920, of UNION.

This was an action for the abduction of plaintiff's sixteen-year-old daughter from his home by the defendants. Verdict and judgment for plaintiff. Appeal by defendant.

*F. W. Ashcraft; Stack, Parker and Craig for plaintiff.*
*Maness, Armfield & Vann for defendants.*

CLARK, C. J. In the absence of the plaintiff from his home on 14 January, 1919, the defendants, M. C. and Baxter Holmes, went to his house and carried away his sixteen-year-old daughter in an automobile to South Carolina where she was married to Henry Griffin. This was done against the earnest protest of the plaintiff's wife. The defendant M. C. Holmes hired the car and was driving it. Baxter was on the

front seat with him. They came up to the plaintiff's home by the back way. The plaintiff's wife missed her daughter, went to the door and saw her getting into the car. The mother then ran out to the car and pleaded with her daughter not to go. She was crying. The defendants said that they were just going to Monroe. The mother cried and wept, and the defendants "went so fast that they did not look back." The plaintiff got a car and left for Chesterfield, S. C., and telephoned there forbidding the issuance of marriage license. When the plaintiff saw the defendant Holmes he complained to him of this treatment and he grossly insulted the plaintiff. The father then searched for and found Griffin and his daughter in a negro house. Griffin struck the plaintiff twice with an iron poker, beat and bruised the plaintiff until he was unconscious, and then fled with the plaintiff's daughter. Griffin is not a party to this action, which is solely against Baxter and Craig Holmes for the violence and abduction in carrying off plaintiff's daughter from his home. Baxter Holmes went with Griffin to Monroe to get the marriage license and swore that the girl was eighteen years of age when the testimony is that she was barely sixteen. There was evidence as to the plaintiff's mental anguish caused by the conduct of the defendants.

The defendants abandoned all exceptions except as to the refusal to nonsuit; the refusal to charge that the evidence disclosed no cause of action; the refusal to charge that the plaintiff's evidence did not warrant more than nominal damages, and to the following paragraph in the charge: "The plaintiff would be entitled to recover, if entitled to recover at all, such damages as are a reasonable compensation for the mental anguish suffered by plaintiff by reason of the abduction of his daughter, if the jury find that he suffered mental anguish as a result thereof."

As to the first two exceptions, *Howell v. Howell,* 162 N. C., 283, is conclusive in favor of the action of the court below. In that case it was said that at common law it was true that "abduction of a child was not an offense." *S. v. Rice,* 76 N. C., 194; but 3 Bl. Com., 140, holds that a civil action lay therefor and that a father could recover damages, though he says it "was a doubtful question, on which the authorities were divided, whether a father could recover for the abduction of any other child than the oldest son and heir." But, after citing numerous authorities, the Court, in *Howell v. Howell,* says that the action can now be sustained, and the jury has a right to award damages for mental anguish as a part of the compensatory damages for such wrong, adding: "The most usual case in which this action is brought has been upon the abduction of a daughter for marriage or immoral purposes, but the modern authorities, as we have said, have advanced and now the parent can recover damages for the unlawful taking away or concealment of

a minor child, and it is not limited to cases in which such child is heir or eldest son nor to cases where the abduction is for immoral purposes, nor are the damages limited to the action for loss of services"; adding: "The real ground of action is compensation for the expense and injury, and punitive damages for the wrong done him in his affections and the destruction of his household, as said in *Scarlett v. Norwood,* 115 N. C., 285; *Abbott v. Hancock,* 123 N. C., 99; *Snider v. Newell,* 132 N. C., 614, 623, 624."

The law is thus summed up, with citations of numerous authorities, in 1 A. & E. (2 Ed.), 167, as follows: "A father has a right of action against every person who knowingly and wittingly interrupts the relation subsisting between himself and his child or abducting his child away from him or harboring the child after he has left the house." In *Howell v. Howell* it is further said: "It can make no difference that the child at the time she was carried away was not in the immediate custody of the father. She was temporarily with her mother but he was legally entitled to her custody or to have it adjudged by the court, and to take her out of the jurisdiction of the court, or secrete her, was an injury for which he was entitled to damages. The allegation in the complaint that the defendant Briggs 'procured, aided, assisted and advised the taking off of the child and conceal its whereabouts, and has thereby caused the plaintiff great and agonizing distress of both mind and body,' states a good cause of action against him." In *Howell v. Solomon,* 167 N. C., 591, *Walker, J.,* quoting *Howell v. Howell, supra,* as to the right of the father to the custody of the child, says: "This right of the father continues to exist until the child is enfranchised by arriving at years of discretion, when the empire of the father gives place to the empire of reason."

The defendants rely upon *Wilkinson v. Dellinger,* 126 N. C., 462, which was a suit against a register of deeds for issuing a license to marry a minor which has no application to the facts in this case. He did not deprive the father, forcibly and violently and against his will, of the custody and society of his daughter as the defendants did, but even in that case it is said, "From a time whereof memory runs not, a parent and those in *loco parentis* have a right to the company and services of a child during its infancy, and any one unlawfully invading that right is liable to the plaintiff in damages."

In that case the court held that the register of deeds was liable for the penalty prescribed by the statute, but not for depriving the plaintiff of the services and companionship of his daughter, which clearly the register did not do. The girl was of a lawful age to marry, and upon the marriage her control by the father ceased by operation of law. It clearly has no application to this case.

The court also properly refused to charge that the plaintiff's evidence did not warrant more than nominal damages. In *Howell v. Howell, supra,* it was held that the jury had a right to award compensatory damages for the wrong and for the mental anguish, and might also award punitive damages, which fitted the last exception in this case.

*Howell v. Howell, supra,* is reported in 31 A. & E. Anno. Cas., 893, with copious notes, 896-899, which are thus summed up: "The right of a father to the custody of his minor children, in the absence of any act on his part by which he may have waived or deprived himself of that right, is not open to discussion, and has frequently been asserted in *habeas corpus* proceedings instituted by him." It is further said that the "right of the father to recover damages for the abduction of a minor child has been questioned in comparatively few cases and is well established," citing a long list of cases. It is also recited, "The basis of the father's right of action for the abduction or enticing away of his minor child is generally held to be the loss of the child's services," giving a long list of cases. "In some jurisdictions it has been ruled that it matters not whether a child renders services in fact. That the parent is entitled to such services on the part of the child is sufficient to give him a right of action, and having such right on which to base the action, he may recover damages for the injury to his feelings, and the loss and companionship of his child as well as for the loss of the child's services." In two jurisdictions, however, the Court repudiates the idea that the loss of the child's services forms a basis of the father's right of action. In *Kirkpatrick v. Lockport,* 2 Brev. (S. C., 276), it says: "The true ground of action cannot be the loss of service, for a child may be of an age so tender or of a constitution so delicate as to be incapable of rendering any service. The true ground of action is the outrage and oppression; the injury the father sustains in the loss of his child; the insult offered to his feelings; the heartrending agony he must suffer in the destruction of his dearest hopes, and the irreparable loss of that comfort and society which may be the only solace of his declining age."

It is very true that in many instances, owing to the tender years of the child or its delicate health, or the pecuniary condition of the parents, the loss of services are inappreciable, but in all cases there is the wrong and outrage of taking from the custody of the parent whose feelings of affection, whose right to the love and companionship of the child are violated as in this case. There are, however, a very large number of instances in which the loss of the services of the child are a serious consideration. A very large part of the population of this or any other State are people who either are laborers or in moderate circumstances. They look to the aid of the older children in services about

the house, or their wages until they attain majority, to add to the family resources and to aid in the support of the younger children. This with a very large element of the population is a very serious consideration, and if other parties can, by enticement, persuasion or offer of wages induce the children, after they arrive at an age where their services are useful to the family or can procure wages, with impunity to leave and deprive the parents of their services, it will be a very serious loss to them, besides the insult and the injury of enticing them from the custody of their parents. This consideration is lacking where the parents are in affluent circumstances, but the outrage and injury to the parents will subject the offending parties to liability both for compensatory and punitive damages.

The law protects the parents in the right to the custody, the control and the services of their children until they reach the legal age. When a marriage has legally taken place the control of the father or mother ceases, and with it the right to the wages of the child; but, none the less, if the marriage has been procured against the will of the parents, it may well be that the parents would be entitled to compensation for the loss of services in cases where the services or wages of the child would have been relied upon by the parents.

That question, however, is not now before us. In this case the defendants, in a most lawless way, went to the house of the plaintiff by a back way, took his daughter from the custody of a weeping mother and carried her to another State. If this had been followed by moral misconduct it would have increased the damages; but none the less, though it was followed by marriage, the father has been deprived of the services of his daughter, his right to expect her love and affection, and is entitled to the protection of the court against such lawlessness, which, notwithstanding the subsequent marriage, can be asserted as to these defendants by compensation for the mental anguish inflicted on him and punitive damages for the violation of his rights and the indignity to his feelings shown in the high-handed and lawless conduct of the defendants.

It is not unusual among working people and those in moderate circumstances to rely to a large extent upon the services and wages of the older children, and often, in granting their consent to the marriage of a minor, if a daughter, it is upon an agreement that the husband shall work with the parents on some agreed terms. This is by no means unusual, and as a classical instance it will be remembered that Jacob thus served for seven years in advance for Rachel, and that when the morning dawned on Leah, he served yet another seven years notwithstanding the fraud of Laban.

That the damages are not limited to an action for the loss of services was held by us in *Hood v. Sudderth,* 111 N. C., 215; *Willeford v. Bailey,*

27—181

132 N. C., 402; and especially is this so when by reason of the age of the daughter there is no longer any legal right on the part of the parent to exact her services. Still in these cases there are elements of damages, the real ground of action in such cases being compensation for the expense and injury and punitive damages for the wrong done him in his affections and the destruction of his household, as stated in *Scarlett v. Norwood* and other cases, *supra*. There are many other States now which hold that "A parent may maintain an action for the seduction of the daughter without averment or proof of loss of services or expense of sickness."

Even on an indictment for abduction it is not necessary that it should be against the will of the minor child. It is sufficient if it is against the will of the father and that it is committed by violence, fraud, or persuasion. *S. v. Burnett,* 142 N. C., 581; *S. v. Chisenhall,* 106 N. C., 676; *S. v. George,* 93 N. C., 567. The defendants could not be indicted, however, for our statute for abduction applies only when the child is under fourteen years of age. C. S., 4222, 4223, 4224.

It is also true that merely marrying a woman who is a minor, if over the age of fourteen, without the consent or her parent or guardian, is not a crime in this State though it has been made so in Georgia and several other States. 1 A. & E. (2d Ed.), 173. Nor can the father recover for loss of services against the husband after marriage as a general rule. "A parent, or one standing in *loco parentis* of a child, is entitled to recover loss of damages sustained by reason of the taking of such child from him by force, fraud, or persuasion, and the parent's consent is no defense if it has been obtained by fraud." 1 C. J., 301. But it is there added: "As a general rule, where the abduction has been for the purpose of marriage, if a legal one, there can be no recovery for loss of services after the marriage has taken place."

This action, however, is not against the husband nor for loss of services after marriage. His Honor correctly told the jury that they could "Award the plaintiff such damages as is a reasonable compensation for the loss of the services of his daughter between the time of her abduction and the time of her marriage, and also such damages as are a reasonable compensation for the mental anguish suffered by plaintiff by reason of the abduction of his daughter, if the jury find that he suffered mental anguish as a result thereof." This was a correct exposition of the law against these wrong-doers, and there is no exception that the jury exceeded this instruction, which is assigned for error. The small amount of damages ($275) assessed seems to indicate that they fully understood and kept well within the limits of the instruction.

No error.

HOKE, J., concurs in result.

ALLEN, J., dissenting: I agree to the general principles stated in the opinion of the Court, but do not think they have any application to the facts in this case.

The daughter of the plaintiff was sixteen years of age; she left her home voluntarily according to the evidence of her mother, a witness for the plaintiff, and she was married within twelve hours. The marriage was therefore valid, although the father did not consent, and upon its consummation the rights and duties of the parent, including the right to service, were transferred to the husband.

The statute (C. S., 2494) provides that "All unmarried male persons of sixteen years or upwards of age, and all unmarried females of fourteen years or upwards of age, may lawfully marry" (the exception is omitted because not applicable); and if the daughter, being sixteen, could lawfully marry, she could lawfully consent to marry, and this she did when she left home voluntarily for the purpose of marrying, and she was not therefore induced to leave the parent wrongfully or unlawfully, on which this action must rest.

I think the case of *Wilkinson v. Dellinger,* 126 N. C., 462, is directly in point. The action was against the Register of Deeds of Catawba County. Two causes of action were alleged in the complaint, the first being to recover the penalty of $200 for unlawfully issuing the license for the marriage of a daughter under eighteen years of age without the consent of her father, and the second cause of action "for deprivation of the services and society of his daughter occasioned the plaintiff by the wrongful issue of the license." The defendant demurred to the complaint, and the demurrer was overruled as to the first cause of action and sustained as to the second cause of action.

The demurrer of course admitted the allegations in the complaint, that the defendant had wrongfully issued the license and had deprived the plaintiff of the services and society of his daughter.

The Court has this to say of the second cause of action: "A female may lawfully marry at the age of fourteen years. Code, sec. 1809. From a time where memory runs not, the parent and those in *loco parentis* have a right to the company and services of the child during its infancy, and any one unlawfully invading that right is liable to the parent in damages. During the same period of time the law requires the parent to feed, clothe and protect the infant. This right and these duties go together, and as a general rule when one legally terminates the other ceases. . . . It is equally well settled that a husband, who has married an infant at a time when she may lawfully marry, *i. e.,* after fourteen years of age, is entitled to the company, comfort and services of his wife, and that any interference therewith subjects the offender to punishment in damages. . . . The law of marriage, on

the grounds of public policy and the peculiar relationship established by marriage, overrides the right of the parent to the services of the child, and the duties of care and protection are imposed on the husband, and at the same moment those duties as to the parent cease. So the marriage displaces parental rights instead of creating a conflict. The marriage in a case like this emancipates the wife from her former parental duties, and if damage has come to the plaintiff it is *damnum absque injuria.* Cooley on Torts (2d Ed.), 278; *Comrs. v. Graham,* Mass., 578; *Hervey v. Moseley,* 7 Gray, 479; *Grant v. Grant,* 109 N. C., 710; *S. v. Parker,* 106 N. C., 711.

"It follows, therefore, that the plaintiff, having no right to control nor any interest in the services of his daughter, cannot recover damages from any one." See, also, 20 R. C. L., 617; *Harvey v. Moseley,* 66 Am. Dec., 515.

I do not think the case of *Howell v. Howell,* 162 N. C., 283, which is said to be conclusive in the opinion of the Court, has anything to do with the question presented here, because in that case the child abducted was only six years of age, and there was no question of marriage.