JENNIE B. MORRIS v. JAMES R. BRUNEY

No. 8520SC158

(Filed 21 January 1986)

1. **Parent and Child § 4.1— alienation of affections of child—no right of action by parent**

Summary judgment on plaintiff's claim for damages for the alienation of the affections of her son was proper because, absent seduction or abduction, no action for alienating the affections of a child will be supported by the parent-child relationship. Even if plaintiff's claim were to be construed as an action for abduction, plaintiff alleged only that her son left home with the aid of defendant after defendant cast aspersions on plaintiff's character and fitness as a mother. In a civil case for the abduction of a minor, there must be some allegation that the minor child was taken or carried away, actually or constructively, by the defendant.

2. **Libel and Slander § 5.3— slander—rumor that plaintiff pregnant when married —repeated as rumor—dismissal proper**

The trial court did not err in an action for slander and alienation of the affections of plaintiff's son by dismissing the slander action at the close of plaintiff's evidence. Although defendant told plaintiff's daughter, at the daughter's request, that his wife had heard a rumor at work that plaintiff had gotten married because she was pregnant, this did not amount to an accusation that plaintiff committed a crime involving moral turpitude because defendant's remark did not assert as fact the substance of the false rumor.

3. **Libel and Slander § 5.2— slander—statements that plaintiff not a good parent —plaintiff employed at nursery school—dismissal proper**

The trial court did not err in an action for slander and the alienation of the affections of plaintiff's son by dismissing the slander action at the close of plaintiff's evidence where the evidence, taken in the light most favorable to plaintiff, would support an inference that defendant told a third party that plaintiff was "unreasonable," "immature," and "unintelligent"; "could not raise a sixteen-year-old"; "did not act like a mother"; "attempted to bribe her son"; and "had a mental ability of a child of age 5." Even though plaintiff worked with children in a nursery school, those statements were not actionable per se, plaintiff offered no evidence of special damages, and plaintiff failed to prove that defendant published any statements constituting slander per se.

APPEAL by plaintiff from *Mills, Judge*. Judgment entered 7 September 1984 in Superior Court, ANSON County. Heard in the Court of Appeals 23 September 1985.

*Henry T. Drake for plaintiff appellant.*

*Taylor and Bower, by George C. Bower, Jr., and E. A. Hightower, of counsel, for defendant appellee.*

BECTON, Judge.

Plaintiff, Jennie B. Morris, brought an action for the alienation of the affection of her son and for slander against defendant, James R. Bruney. The trial court granted defendant's motion for summary judgment as to the claim for alienation of affection but denied summary judgment on the slander claim. The trial court dismissed the slander claim at the close of plaintiff's evidence. Plaintiff appeals.

I

Many, if not most, of the facts in this case are in dispute. The parties described the same activities in different tones and with contrasting emphasis on various details. But on appeal from summary judgment and nonsuit, we must take the facts in a light most favorable to the non-movant, the plaintiff. They are summarized below.

Jennie Morris is the mother of four children—three by her first husband, Roy Thomas Morris, and one by her second husband. One of her children, Derrick Morris, turned sixteen on 9 October 1983. Around this time, Jennie Morris and Derrick lived next door to James Bruney, who was married and had three teenage step-children. Jennie Morris and James Bruney were very friendly and sociable neighbors. They frequently visited in each other's homes, and their children spent time together.

Derrick was a cooperative, loving and caring son, who did well in school and often helped around the house, until about August 1983 when he began to spend a great deal of time (twenty to twenty-five hours per week) with James Bruney. In the past, Bruney had conducted hypnotic sessions with various people, including Jennie Morris, and, without Jennie's consent, attempted to exercise mind control over Derrick through closed hypnotic sessions. Because of this, Derrick became progressively less cooperative, more hostile toward Jennie and obstinate. Derrick refused to do his usual chores and called his mother unreasonable. Jennie expressed her concern to Derrick, Bruney, and Bruney's wife, and she told Derrick to stay away from Bruney's residence.

In essence, Bruney interfered with Jennie's relationship with her son by telling Derrick that his mother was unreasonable, immature, and unintelligent and that Bruney could be the father

Derrick needed. Derrick began to do poorly at home and at school. He refused to accept a car his mother gave him for his sixteenth birthday because Bruney had convinced Derrick that Jennie's rules for the use of the car were unreasonable. Derrick left home, and Bruney tried to convince Derrick's father to institute court proceedings to get custody of Derrick. Jennie found notes in Bruney's handwriting in Derrick's room in which Bruney admitted he had controlled Derrick's mind and had told Derrick that Jennie had gotten married because she was pregnant and left her husband for another man. Bruney encouraged Derrick to become sexually overactive and to refuse to communicate with Jennie.

In her Complaint, Jennie alleged several instances of slander by Bruney, generally disparaging Jennie's ability to raise her family and her fitness as a mother, but also asserting that she was pregnant before she was married. Jennie alleged that all of this was false. As a consequence, Jennie claimed, she suffered the loss of services and companionship of her son and was subjected to scorn, contempt and ridicule entitling her to $100,000 in actual damages and $150,000 in punitive damages.

Other facts necessary for an understanding of the case will be described in the body of the opinion.

## II

[1]   Jennie Morris' claim for alienation of the affection of her child is similar to *Edwards v. Edwards*, 43 N.C. App. 296, 259 S.E. 2d 11 (1979). In *Edwards*, this Court considered, as an issue of first impression in North Carolina, whether a parent could recover from another parent for alienating the affection of their child. After stating the general rule that, absent seduction or abduction, no action will be supported by the parent-child relationship, the Court noted that such an action was neither recognized at common law nor provided for by statute in this State. *Id.* at 300-01, 259 S.E. 2d at 14 (quoting 3 Lee, N.C. Family Law Sec. 244, at 132 (1963) and other authorities). The Court found the reasoning in *Henson v. Thomas*, 231 N.C. 173, 56 S.E. 2d 432 (1949) (child has no action against third party for alienating affections of mother) controlling, primarily because of the distinction drawn between the relationship of a husband and wife and that of a parent and child. The former is protected because of the unique nature of the injury involved—a loss of consortium and conjugal society—a

right peculiar to the marital relationship. *Edwards*, 43 N.C. App. at 302, 259 S.E. 2d at 15.

> This Court has also recognized that the gravamen of the action for alienation of affections is a spouse's loss of the protected marital right of the affection, society, companionship and assistance of the other spouse. *Sebastian v. Kluttz*, 6 N.C. App. 201, 170 S.E. 2d 104 (1969). The relation of parent and child supports no legal right similar to that of consortium.

*Id.*

Jennie Morris cites *Howell v. Howell*, 162 N.C. 283, 287, 78 S.E. 222, 224 (1913) which held that a father has an action against one who intentionally interrupts the relation of the father and child or who abducts the child from the father's home. In *Howell*, the parents of the child had agreed in writing that their child would remain with the mother until her sixth birthday, at which time she would be returned to her father. Just before the child reached age six, the mother "spirited the child away beyond the State to some place unknown to the plaintiff." 162 N.C. at 283-84, 78 S.E. at 223. Thus, *Howell* is distinguishable in that it involved the physical abduction—"the unlawful taking away or concealment"—of a minor child. *Id.* at 286, 78 S.E. at 224.

Similarly, *Little v. Holmes*, 181 N.C. 413, 107 S.E. 577 (1921) is distinguishable. In *Little*, the Supreme Court held that a father had an action against one who induced the father's minor sixteen-year-old daughter to leave home against her father's will, even though with the consent of the daughter. The action in *Little* was for the abduction of the child, not the alienation of the child's affection. The defendant had driven to the father's house "by the back way," in the father's absence, and "spirited away" the child. The mother was home, and she protested passionately; the defendant said they were going to Monroe, but he sped away in the car to South Carolina where the child was married to another man who lied about the child's age. 181 N.C. at 413-14, 107 S.E. at 577. The case for abduction was clear, and the Court held that, under *Howell*, abduction was a valid cause of action. The Court then discussed, among other things, whether the plaintiff could recover *damages* for the alienation of his daughter's affection, and the Court held that he could. *See id.* at 416-18, 107 S.E. at 578-80.

Thus, there are several cases decided by our Supreme Court in the late nineteenth century and in the early part of this century that recognize civil causes of action for the seduction or the abduction of minor children. *See, e.g., Little; Howell; Snider v. Newell*, 132 N.C. 614, 44 S.E. 354 (1903) (seduction); *Abbott v. Hancock*, 123 N.C. 99, 31 S.E. 268 (1898) (seduction); *Scarlett v. Norwood*, 115 N.C. 284, 20 S.E. 459 (1894) (seduction). In these cases, one element of damages to consider was the suffering caused by the alienation of the affection of the abducted or seduced minor child. Nevertheless, this does not form the basis for a cause of action based solely on alienation of affection.

The allegations in the case at bar are insufficient to support an action for abduction. Plaintiff correctly asserts that abduction need not be accomplished against the will of the child. Plaintiff quotes language from *Little*, however, for the proposition that abduction may be accomplished by mere persuasion.

> Even on an indictment for abduction it is not necessary that it should be against the will of the minor child. It is sufficient if it is against the will of the father and that it is committed by violence, fraud, or persuasion. *S. v. Burnett*, 142 N.C., 581; *S. v. Chisenhall*, 106 N.C., 676; *S. v. George*, 93 N.C., 567. The defendants could not be indicted, however, for our statute for abduction applies only when the child is under fourteen years of age. G.S. 4222, 4223, 4224.

*Little*, 181 N.C. at 418, 107 S.E. at 579. Thus, on a criminal indictment for abduction, it was sufficient to aver that the defendant took and carried away the victim by force, fraud or persuasion. *See State v. Burnett*, 142 N.C. 577, 581, 55 S.E. 72, 74 (1906); *State v. Chisenhall*, 106 N.C. 676, 679, 11 S.E. 518, 519 (1890).

In a civil case for the abduction of a minor, there must be some allegation that the minor child was taken or carried away, actually or constructively, by the defendant. In *Little*, the defendant deprived "the father, forcibly and violently and against his will, of the custody and society of his daughter . . . ." 181 N.C. at 415, 107 S.E. at 578. In the case at bar, plaintiff Morris alleges only that her son left home, with the aid of defendant, after defendant Bruney cast aspersions on plaintiff's character and fitness as a mother. This is insufficient to support an action for abduction in this State. Were we to rule otherwise, every parent whose

child was convinced to leave home before majority would have a cause of action for abduction through which to recover for the alienation of affection. There are many sociological and other pressures that prey on children's minds, and some educational, religious and political organizations are critical of the home lifestyles in which many parents raise their children. When such pressures and criticisms persuade a child to leave home, should the parents be allowed to sue in tort for abduction and recover for the loss of the child's affection? We think not. Summary judgment on the plaintiff's claim for damages for the alienation of the affection of her son was proper, even if it were to be construed as an action for abduction.

### III

[2]  Plaintiff's second argument is that the trial court erroneously dismissed the slander claim at the close of plaintiff's evidence by granting defendant's motion for a directed verdict under Rule 50, N.C. Rules Civ. Proc. In considering a motion for directed verdict, the non-movant's evidence must be taken as true and contradictions, inconsistencies and conflicts in the evidence must be resolved in favor of the non-movant. *Cook v. Export Leaf Tobacco Co.*, 50 N.C. App. 89, 272 S.E. 2d 883 (1980), *disc. rev. denied*, 302 N.C. 396, 279 S.E. 2d 350 (1981). If it is the defendant's motion, the plaintiff is entitled to the benefit of all reasonable inferences in his or her favor, and the motion will be granted only if, as a matter of law, the evidence is insufficient to justify a jury verdict for the plaintiff. *McKay v. Parham*, 63 N.C. App. 349, 304 S.E. 2d 784 (1983), *disc. rev. denied*, 310 N.C. 477, 312 S.E. 2d 885 (1984); Shuford, N.C. Civ. Prac. & Proc. Sec. 50-5, at 376 (2d ed. 1981). In the case at bar, only plaintiff's evidence can be considered, and it will be taken as true for the purposes of this appeal.

There has been considerable confusion of terms in the application of the law of slander. McCormick, *The Measure of Damages for Defamation*, 12 N.C. L. Rev. 120, 121 (1934); Prosser and Keeton, The Law of Torts Sec. 111, at 782 (5th ed. 1984); Note, 48 N.C. L. Rev. 405, 405 (1970); 50 Am. Jur. *Libel and Slander* Sec. 2 (1970). Because both parties in this action rely on cases in which terminology is misused, it may be helpful to define our terms. There is an important distinction between publications that are defamatory per se and defamatory publications that are ac-

tionable per se. A publication is defamatory per se (generally, libelous per se if written and slanderous per se if spoken) if its injurious or defamatory character is clear and obvious from the words alone.[1] This should be contrasted with publications that are defamatory only in context, requiring the plaintiff to plead and prove extrinsic facts and innuendo necessary to show that the publication was, in fact, defamatory.[2] See McCormick, supra, at 122.

A defamatory publication may be actionable per se or only actionable upon proof of special damages. This distinction is often confused with the distinction drawn in the previous paragraph. Id. at 121-22. And it is in this classification that libel and slander are treated differently.

Traditionally, all libels were treated as actionable per se (plaintiff did not need to prove special damages), perhaps because, being in relatively permanent written form, damage could be presumed.[3] Most American courts, however, began to treat only those publications that were libelous per se (obviously defamatory on their face) as actionable per se. Prosser, supra, Sec. 112, at 795-96; Note, supra, at 407. Intuitively, this makes sense. The burden of proof, to show special damages, is greater when it is not clear that the publication is libelous to the plaintiff. This appears

---

1. Such publications are defamatory "on their face." An example is the statement, "Mr. X is a thief." McCormick, supra, at 121-22. Whether a publication falls within this category is a question of law. 50 Am. Jur. 2d Libel and Slander Sec. 8.

2. For example, additional facts are necessary to demonstrate how the comment, "Mr. X did not pay for this car," would be injurious to Mr. X's reputation: e.g., that the people who heard the comment knew that Mr. X had an unexcused obligation to pay for the car.

3. The development of different rules for slander actionable per se and slander actionable only on proof of special damages is probably a result of the different rules historically applied to actions brought in law and those brought in equity; and the later development of a distinct body of law for libel was influenced by the growth of education and printing. McCormick, supra, at 121. Another explanation for treating all libels as actionable per se is that there was a deliberate attempt to tip the scales "against those who deliberately put down on paper a lasting memorial of any lie against a neighbor's good name" and to handicap those who complain to the courts for "oral detractions of the more trivial sort." Id. The law of libel is extensively developed in this State. See, e.g., Renwick v. News and Observer Pub. Co., 310 N.C. 312, 316-17, 312 S.E. 2d 405, 408-09 (setting forth the three classes of libel and four categories of libel per se), cert. denied, --- U.S. ---, 83 L.Ed. 2d 121, 105 S.Ct. 187 (1984).

to be the rule in our State. *See, e.g., Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979); *Kindley v. Privette*, 241 N.C. 140, 144-45, 84 S.E. 2d 660, 662-63 (1954); *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). Apparently because any publication that was libelous per se was also actionable per se, the terms were used interchangeably. The Supreme Court long ago recognized that "[t]he phrase 'libelous *per se*,' used extensively, has been criticized as inexact. . . . While this phrase appears in our decisions, the words are used in the sense of actionable *per se*." *Kindley*, 241 N.C. at 144, 84 S.E. 2d at 663.

Originally, slander was not actionable without allegation and proof of special damages. Prosser, *supra*, Sec. 112, at 788. Specific exceptions were established so that oral publications falling within these categories were actionable per se. These publications were actionable without proof of special damages regardless of whether they were slanderous per se or slanderous only in context (often called slander per quod). *Id.*; Note, *supra*, at 406. The categories of slander currently actionable per se are: (1) accusations that the plaintiff committed a crime involving moral turpitude; (2) allegations that impeach the plaintiff in his or her trade, business, or profession, and (3) imputations that the plaintiff has a loathesome disease.[4] *Tallent v. Blake*, 57 N.C. App. 249, 291 S.E. 2d 336 (1982); *Williams v. Rutherford Freight Lines*, 10 N.C. App. 384, 179 S.E. 2d 319 (1971).

Unfortunately, through the years the confusion in terminology in the law of libel spilled over into the law of slander. The original rule in North Carolina apparently followed the traditional rule that slander per quod was still actionable per se if it fit within one of the specific categories. *See Scott v. Harrison*, 215 N.C. 427, 2 S.E. 2d 1 (1939). Later cases, however, treat slander as actionable per se only if it is slanderous per se. If extrinsic facts are needed to show the slander, special damages also must be alleged and proven, even though the remark fits within one of the

---

4. Apparently, a libelous publication may be actionable per se if it "otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick*, 310 N.C. at 317, 312 S.E. 2d at 409. This broad category is notably absent from decisions discussing slander, but there is some language in the cases implying the existence of other categories of oral publications that are considered slanderous per se and, therefore, actionable per se. *See, e.g., Penner v. Elliott*, 225 N.C. 33, 33 S.E. 2d 124 (1945); *Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E. 2d 236, 237 (1969).

three exceptions. *See, e.g., Badame v. Lampke,* 242 N.C. 755, 89 S.E. 2d 466 (1955); *Penner; Gibby v. Murphy,* 73 N.C. App. 128, 325 S.E. 2d 673 (1985). Although this approach has been severely criticized, *see* Note, 48 N.C. L. Rev. 405 (1970), it appears to be the current rule in this State.

There is some evidence in this case, in the form of the testimony of plaintiff's daughter, Ellen, that Bruney told Ellen that Bruney's wife had heard a rumor at work that Ellen's mother was pregnant before she got married, and that she got married for this reason. Although Ellen testified that she knew Bruney expressed only his own opinion, at her request, plaintiff contends that this amounts to an accusation that plaintiff committed a crime involving moral turpitude, actionable per se under the first category.[5] Although there is some authority for the proposition that the expression of an opinion may, in some cases, carry with it the assertion of fact, *see* Prosser, *supra,* Sec. 111, at 776, we believe defendant's remark to plaintiff's daughter did not assert as fact the substance of the false rumor. Defendant merely repeated what his wife told him that someone had told her. This was at Ellen's request, and defendant explained that it was a rumor.

[3] The evidence presented at trial, taken in a light most favorable to the plaintiff, would support an inference by the jury that defendant told a third party that the plaintiff was "unreasonable," "immature" and "unintelligent"; "could not raise a sixteen-year-old"; "did not act like a mother"; "attempted to bribe her son"; and "had a mental ability of a child of age 5." Plaintiff argues that, because she works with children in a nursery school, these remarks will affect her in her trade or business and are actionable per se under the second category of actionable-per-se slander. We do not agree.

---

5. Plaintiff also contends that Bruney's statement is actionable per se because it is an imputation of unchastity. We note that in 1808, a fourth category of slander —charging incontinency to a woman—was added by statute to the list of false statements actionable per se. 1808 N.C. Sess. Laws Ch. 13; *see* N.C. Gen. Stat. Sec. 99-4 (1972). The accusation had to allege that a woman committed a criminal act of adultery or fornication. *McBrayer v. Hill,* 26 N.C. 136 (1843). The statute, G.S. Sec. 99-4, was repealed in an effort to rid this State's laws of sex-based distinctions causing discrimination. 1975 N.C. Sess. Laws Ch. 402. Thus, plaintiff's only valid argument relating to this statement is that defendant accused her of committing a crime involving moral turpitude, fornication.

Morris v. Bruney

> [T]he better reasoned decisions seem to hold that in order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is ·not enough that the words used tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation. . . . Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business.

*Badame*, 242 N.C. at 757, 89 S.E. 2d at 468 (citations omitted).

> North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff "dishonest" or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se. . . . In the law of defamation, special damage means pecuniary loss, as distinguished from humiliation.

*Stutts v. Duke Power Co.*, 47 N.C. App. 76, 82, 266 S.E. 2d 861, 865 (1980) (citations omitted). These statements might have been actionable had plaintiff alleged special damages, but they are not actionable per se. *Id.*; *Tallent.*

Plaintiff Morris offered no evidence of special damages. She also failed to prove that defendant published any statements constituting slander per se. Therefore, the trial court properly dismissed plaintiff's action for slander.

For the reasons set forth above, the judgment of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge PARKER concur.