RAYMOND U v. DUKE UNIVERSITY, LEONARD R. PROSNITZ, M.D., AND MARK J. ENGLER, M.D.

No. 8714SC764

(Filed 6 September 1988)

**1. Malicious Prosecution § 13.2— civil action—failure to show lack of probable cause**

Plaintiff's evidence in a malicious prosecution action was insufficient to show that Duke University acted unreasonably and thus lacked probable cause to institute an action against plaintiff for conversion of a Thermotron and for a restraining order requiring plaintiff to return parts he had taken from the Thermotron.

**2. Malicious Prosecution § 13— failure to show special damages**

The restraint of plaintiff from entering a building owned by Duke University where a Thermotron was located did not constitute a substantial interference with plaintiff's person so as to constitute proof of special damages in a malicious prosecution action based on a prior civil proceeding.

**3. Libel and Slander § 5.2— insufficient evidence of slander per quod**

Plaintiff failed to show that written statements by his supervisor relating to his work constituted libel *per quod* where there was no evidence as to the meaning attached to the statements by the persons to whom they were communicated.

**4. Libel and Slander § 5.2— statements relating to profession—slander per se**

Statements by defendant to plaintiff's colleague that plaintiff was "a liar, deceitful, absolutely useless, and does not have a Ph.D., and was a fraud" impeached plaintiff in his profession and constituted slander *per se*.

**5. Trial § 52— setting aside verdict for excessive award—discretion of court**

A motion for a new trial based on excessive damages is addressed to the discretion of the trial court and is not reviewable in the absence of abuse of discretion.

**6. Libel and Slander § 15— evidence of character**

Evidence of the character of the plaintiff is admissible in a defamation action, and such proof may be made by testimony as to reputation or by testimony in the form of an opinion. N.C.G.S. § 8C-1, Rule 405(a).

**7. Evidence § 46.1— Japanese society's perception of lawsuits—lay opinion testimony**

Testimony by plaintiff's wife concerning Japanese society's perception of lawsuits was admissible under N.C.G.S. § 8C-1, Rule 701 in an action for malicious prosecution and slander.

**8. Libel and Slander § 16— plaintiff's background—admission and exclusion of evidence**

The trial court in a defamation action did not err in permitting plaintiff and other witnesses to testify as to plaintiff's background or in excluding a

portion of the testimony by defendants' witnesses concerning plaintiff's background. N.C.G.S. § 8C-1, Rule 403.

**9. Interest § 2; Judgments § 55— interest on damages for slander**

The trial court did not err in awarding plaintiff interest on compensatory damages for slander from the date of commencement of the action where defendants failed to raise at trial the issue of non-coverage by one defendant's liability insurance. Former N.C.G.S. § 24-5.

**10. Appeal and Error § 24.1— ineffectual cross-assignments of error**

Plaintiff appellee's cross-assignments of error were ineffectual where they did not present an alternate basis to support the trial court's judgment but attempted to show that the trial court should have entered additional judgments in plaintiff's favor.

APPEAL by defendants from *Hobgood (Robert), Judge.* Judgment entered 29 September 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 11 April 1988.

This is a civil action wherein plaintiff seeks compensatory and punitive damages from defendants due to malicious prosecution, abuse of process, intentional infliction of emotional distress, conversion, trespass, civil conspiracy, slander and libel. Evidence presented at trial tends to show:

Plaintiff was an Assistant Professor in the Division of Radiation Biology of the Department of Radiology at Duke University Medical Center. He held a Ph.D. in radiation biology and genetics, and he had done extensive research on "hyperthermia," an experimental treatment for cancer involving heat radiation. Following visits to Japan where he met scientists interested in hyperthermia research, plaintiff approached a Japanese manufacturer to seek development of a machine for deep heating cancerous tumors. This manufacturer then developed the Thermotron RF-8 in 1981 and offered to make a unit available to plaintiff for experimentation on humans at Duke.

It was plaintiff's understanding that the loan of the Thermotron was conditioned upon his supervising and controlling use of it in all experimentation. Disagreements arose following the machine's arrival in March 1983 because many of the medical doctors believed plaintiff could not be "principal investigator" on projects involving humans since he was not a medical doctor. Plaintiff, however, believed he was the only person qualified in hyperthermia research at the time of the machine's arrival. Plain-

tiff was subsequently approved as sole principal investigator by the Duke University Institutional Review Board and the Food and Drug Administration.

In May 1983, plaintiff was called to the office of defendant Dr. Leonard R. Prosnitz, the Director of Radiation Oncology. Defendant Prosnitz told plaintiff that he wanted to be the principal investigator on the Thermotron project. Plaintiff disagreed with defendant Prosnitz, who later wrote the Japanese manufacturer to thank him for the "gift" of the Thermotron to Duke.

Following more demands by defendant Prosnitz that he be principal investigator, plaintiff stated that unless a prior understanding among the scientists and medical doctors at Duke that plaintiff have control of the machine was honored, the manufacturer would remove the Thermotron. It was following these encounters that defendant Prosnitz began making statements concerning plaintiff's abilities, qualifications and character. Later, locks to the room where the Thermotron was kept were changed to prevent plaintiff's access to the machine.

On 2 April 1984, plaintiff gained access to the Thermotron and removed several essential parts to render the machine inoperable. The next day there was an attempt to get the parts back from plaintiff because a patient had an appointment to be treated with the machine, but plaintiff refused to return the parts because "he was the principal investigator and the machine was not to be used unless he was present and approved."

An officer from Duke's Public Safety office visited plaintiff at his Veterans Administration Hospital office. Plaintiff acknowledged having the parts but would not return them. On 4 April 1984, Duke filed a complaint for conversion and a request for a temporary restraining order alleging Duke owned the Thermotron, that it was used to treat cancer patients, and that plaintiff refused to return parts without which the machine was inoperable. A temporary restraining order requiring plaintiff to return the parts was issued, but he refused to comply.

The next day, Duke filed a "Motion to Show Cause" why plaintiff should not be held in contempt for failure to comply. Plaintiff appeared in court on 6 April, agreeing to comply with and extend the temporary restraining order. When plaintiff went

to his Veterans Administration Hospital office to get the parts and return them, he found that someone had searched the office.

On 21 May, after the parties presented evidence at a hearing, a "consent order" was entered. The order prohibited the use of the Thermotron at Duke without prior written consent of both parties and ordered that it remain at Duke until it was returned to the manufacturer or the parties otherwise agreed in writing. All parties signed the order which was to be in effect until a final judgment was entered. On 18 July, Duke dismissed its action against plaintiff.

Plaintiff filed this action on 3 October 1984 against Duke University, Prosnitz, Dr. Mark J. Engler, and Dr. Charles E. Putnam. Engler was an Assistant Professor in the Division of Radiation Physics of the Department of Radiology. Putnam was Chairman of the Department of Radiology and supervisor of Prosnitz.

On 24 July 1986, defendants moved for summary judgment. On 13 August 1986, this motion was denied. The action came on for trial on 25 August 1986. At the close of plaintiff's evidence, the trial court granted Putnam's motion for a directed verdict on all counts. The court also granted Engler's motion for a directed verdict on all claims except civil conspiracy. Duke's motion for a directed verdict was granted on all claims except malicious prosecution and conversion.

Following presentation of all the evidence, the following issues were submitted to and answered by the jury as follows:

1. Did the defendant, Duke University, institute a civil action in the Superior Court against the plaintiff, Raymond U, with malice and without probable cause?

ANSWER: *Yes*

2. What amount of damages, if any, is the plaintiff, Raymond U, entitled to recover from the defendant, Duke University, for malicious prosecution?

ANSWER: *$30,000*

3. What amount of punitive damages, if any, does the jury in its discretion award to the plaintiff, Raymond U, from the defendant, Duke University, for malicious prosecution?

ANSWER: *$1,000,000*

4. Did the defendant, Leonard R. Prosnitz, by his actions, inflict severe emotional distress upon the plaintiff?

ANSWER: *No*

5. What amount of damages, if any, is the plaintiff, Raymond U, entitled to recover from the defendant, Leonard R. Prosnitz, for infliction of severe emotional distress?

ANSWER: *0*

6. What amount of punitive damages, if any, does the jury in its discretion award to the plaintiff, Raymond U, from the defendant, Leonard R. Prosnitz, for infliction of severe emotional distress?

ANSWER: *0*

7. Did the defendant, Leonard R. Prosnitz, convert the personal property of the plaintiff on March 30, 1984?

ANSWER: *Yes*

8. Did the defendant, Duke University, convert the personal property of the plaintiff on March 30, 1984?

ANSWER: *Yes*

9. What amount of damages, if any, is the plaintiff entitled to recover from the defendant, Leonard R. Prosnitz, and/or the defendant, Duke University for conversion?

ANSWER: *$1*

10. Did the defendant, Leonard R. Prosnitz, commit a wrongful trespass on the property in possession of the plaintiff?

ANSWER: *No*

11. What amount of damages, if any, is the plaintiff entitled to recover rm [sic] the defendant, Leonard R. Prosnitz, for trespass?

ANSWER: *0*

12. Did the defendant, Leonard R. Prosnitz, libel the plaintiff?

ANSWER: *Yes*

13. Did the defendant, Leonard R. Prosnitz, slander the plaintiff?

ANSWER: *Yes*

14. What amount of damages, if any, is the plaintiff entitled to recover of the defendant, Leonard R. Prosnitz, for libel and/or slander?

ANSWER: *$50,000*

15. What amount of punitive damages, if any, does the jury in its discretion award to the plaintiff, Raymond U, from the defendant, Leonard R. Prosnitz, for libel and/or slander?

ANSWER: *$50,000*

16. Was the plaintiff damaged as the result of a civil conspiracy between the defendant, Leonard R. Prosnitz, and the defendant, Mark J. Engler?

ANSWER: *Yes*

17. If so, what amount, if any, is the plaintiff entitled to recover of the defendants, Leonard R. Prosnitz, and Mark J. Engler, as a result of the conspiracy?

ANSWER: *$60,000*

18. Was the defendant, Mark J. Engler, damaged by fraudulent misrepresentations by the plaintiff, Raymond U?

ANSWER: *No*

19. If so, what amount, if any, is the defendant, Mark J. Engler, entitled to recover for fraudulent misrepresentations from the plaintiff?

ANSWER: *0*

20. Was the defendant, Mark J. Engler, damaged as the result of a civil conspiracy between the plaintiff and others?

ANSWER: *No*

21. If so, what amount, if any, is the defendant, Mark J. Engler, entitled to recover as a result of the conspiracy?

ANSWER: *0*

After the jury returned its verdict, defendants moved for judgment notwithstanding the verdict and for a new trial on 23 September 1986. On 29 September 1986, the trial court entered judgment on the verdict and the motions of defendants. Judgment notwithstanding the verdict was granted only on the civil conspiracy claims against Prosnitz and Engler.

From the judgment for plaintiff against Duke in the amount of $30,000 in compensatory damages and $1,000,000 in punitive damages for malicious prosecution, against Duke and Prosnitz in the amount of $1 for conversion, and against Prosnitz in the amount of $50,000 in compensatory damages and $50,000 in punitive damages for libel and slander, defendants Duke University and Leonard Prosnitz appealed.

*Glenn and Bentley, P.A., by Charles A. Bentley and Robert B. Glenn, Jr., for plaintiff, appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay, Theodore B. Smyth and Susan K. Burkhart, and Fullbright & Jaworski, by Carl W. Vogt, Robert A. Burgoyne and Stephen M. McNabb, for defendant, appellants.*

HEDRICK, Chief Judge.

We note at the outset that although defendants appealed from judgment awarding plaintiff $1 and costs in his claim for conversion, no assignment of error is brought forward and argued in support of this appeal. Thus, judgment awarding plaintiff $1 and costs is affirmed.

With respect to plaintiff's claim against defendant Duke for malicious prosecution, error is assigned to the denial of defendant's timely motions for a directed verdict and judgment notwithstanding the verdict. To recover for malicious prosecution based on all types of actions, the plaintiff must show that the defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in the plaintiff's favor. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). Additionally, in malicious prosecution cases based on underlying civil actions, the plaintiff must prove special damages. *Id.* In this case, defendant Duke contends

plaintiff failed to show sufficient evidence of the favorable termination, lack of probable cause, and special damages.

[1]    Assuming there was sufficient evidence for the jury to find favorable termination, plaintiff had to also prove defendant Duke lacked probable cause and that he incurred special damages. Defendant Duke argues that the evidence taken in a light most favorable to plaintiff is insufficient to allow a jury to find either. We agree.

Malice, as required in malicious prosecution actions, may be inferred from a lack of probable cause to institute the underlying action. *Cook v. Lanier,* 267 N.C. 166, 147 S.E. 2d 910 (1966). The standard for determining whether probable cause existed at the time an action was begun is one of reasonableness. *Fowle v. Fowle,* 263 N.C. 724, 140 S.E. 2d 398 (1965). If a reasonable person would have believed and acted under the circumstances as the defendant did, there is probable cause. *Id.*

In this case, there is not sufficient evidence that defendant Duke acted in any way other than reasonably. As employer of plaintiff and with a duty to patients scheduled for treatment with the Thermotron, defendant Duke acted reasonably in attempting to recover the parts taken by plaintiff. Although it is not clear whether either party had an exclusive right to the use and control of the property, and that there may have been other dispute settlement procedures defendant Duke could have employed, it is clear that it was reasonable for defendant Duke to employ a procedure for a quick, definite resolution since patients depended on the operation of the machine.

Plaintiff failed to prove defendant Duke acted other than reasonably and therefore failed in his proof of lack of probable cause.

[2]    Even if plaintiff had shown sufficient evidence of a lack of probable cause, he also failed to show that he incurred special damages. The requirement of special damages was defined by our Supreme Court in *Stanback v. Stanback,* 297 N.C. 181, 203, 254 S.E. 2d 611, 625 (1979):

    . . . when the plaintiff's claim for malicious prosecution is based on institution of a prior civil proceeding against him he must show . . . that there was some arrest of his person,

seizure of his property, or some other element of special damage resulting from the action such as would not necessarily result in all similar cases. *Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964); *Jerome v. Shaw*, 172 N.C. 862, 90 S.E. 764 (1916). The gist of such special damage is a substantial interference either with the plaintiff's person or his property. . . .

Defendant Duke argues there was no evidence of substantial interference with plaintiff's person or his property and that plaintiff therefore failed to meet his burden of proof on special damages. *Stanback* cites two cases as examples of special damages constituted by substantial interference with a plaintiff's person. In *Overton v. Combs*, 182 N.C. 4, 108 S.E. 357 (1921), the plaintiff was arrested after the defendant brought an action against him for a debt and subsequently had execution issued against the plaintiff's person. In *Barnette v. Woody*, 242 N.C. 424, 88 S.E. 2d 223 (1955), the plaintiff was wrongfully committed to a mental institution because of the defendant's action. In each of these cases, there was a *substantial* interference with the plaintiff's person in that the person's right of movement was *totally* restricted.

In the present case, plaintiff was restricted from entering a building owned by defendant Duke because of defendant Duke's concern about the use of the Thermotron. It was not unreasonable for defendant Duke to seek such a restraint since it employed plaintiff and operated the facilities where the Thermotron was housed, and because of plaintiff's prior actions. These actions by defendant Duke at most were a slight interference with plaintiff's person. Such slight interference is not enough to cause special damages. There had to be a *substantial* interference with plaintiff's right of movement, and the evidence here is not sufficient.

*Stanback* further cites cases in which substantial interference with the plaintiff's property caused special damages. In *Shute v. Shute*, 180 N.C. 386, 104 S.E. 764 (1920), the defendant caused an injunction to issue prohibiting the plaintiff's use of his property in a certain way. In *Brown v. Guaranty Estates Corp.*, 239 N.C. 595, 80 S.E. 2d 645 (1954), the defendant caused the plaintiff's property to be attached. In *Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964), the defendant caused substantial interference with the

plaintiff's property right in his license to sell real estate. Each of these cases involved a substantial interference with the plaintiff's property and not merely an interference with some right of use. In the present case, there was clearly no evidence that the property in question was owned by plaintiff. It was not his property, and therefore any interference, substantial or otherwise, could not amount to special damages. We therefore hold the trial court erred by denying defendant Duke's motions for a directed verdict or judgment notwithstanding the verdict. We need not consider any of defendant Duke's other assignments of error concerning the malicious prosecution claim. Because the trial court should have directed a verdict for defendant Duke, and no recovery could be had by plaintiff, plaintiff is likewise not entitled to punitive damages.

[3]  Defendant Prosnitz contends the trial court erred by denying his motions for directed verdict or judgment notwithstanding the verdict on the issues of libel and slander. He first argues the evidence is insufficient to show that statements made were libelous.

The statements which plaintiff claimed to be libelous were as follows:

> (A) "As you also probably know, Dr. U, has served as the contact person between our institution and numerous people in Japan involved in hyperthermia including yourself, Dr. Sugahara, and Mr. Yamamoto. This is a situation which I think must be changed. Our hyperthermia program has suffered from poor administration. Further, unilateral decisions have unnecessarily entangled the department in institutional and legal disputes."

> (B) "In that application Dr. U listed himself as principal investigator/sponsor, again somewhat in violation of the requirements of the Duke University Committee for Clinical Investigation."

> (C) "However, I believe he was [sic] consistently misinterpreted what his proper functioning should be at this point in time."

> (D) "He may not assume the responsibility for the treatment of patients on this machine nor may he exercise veto powers over when and where patients are to be treated."

(E) "the present dispute arose because Dr. U learned of our intention to do some experiments and to treat a patient and felt that such matters had to be approved by him before-hand and that he must be a participatn [sic] in any and all work done on the Thermotron RF."

(F) "That the plaintiff was an absolute fraud."

There are three classes of libel: (1) publications obviously de-famatory, which are libel *per se*; (2) publications susceptible of two reasonable interpretations, one of which is defamatory and the other not; and (3) publications not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances, which are libel *per quod. Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). The trial court, in its instructions, treated this issue as one of libel *per quod*, and we will consider the statements in light of these in-structions which are not challenged by either party.

Under a libel *per quod* theory, there must be a publication or communication knowingly made by the defendant to a third per-son. *Taylor v. Bakery*, 234 N.C. 660, 68 S.E. 2d 313 (1951), *over-ruled on other grounds, Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956). The publication must have been intended by defendant to be defamatory and had to be understood as such by those to whom it was published. *Robinson v. Insurance Co.*, 273 N.C. 391, 159 S.E. 2d 896 (1968). For these reasons, both the innuendo and special damages must be proven. *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 312 S.E. 2d 405, *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed. 2d 121 (1984). Furthermore, the trial court in this case granted defendant Pros-nitz a qualified privilege since he had some duty or right as plain-tiff's supervisor to communicate statements about his work. *Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 154 S.E. 2d 344 (1967). Such a qualified privilege means a publication is not ac-tionable for libel in the absence of actual malice. *Id.*

In this case, there is sufficient evidence defendant Prosnitz made the statements and that they were communicated to third persons. Evidence that the meaning attached to the statements was defamatory, however, is lacking. None of the Japanese scien-tists and businessmen to whom the first five statements were made testified, and there was no other evidence of any interpreta-

tion they made of the statements. The remaining statement was made to Dr. Putnam, who was not questioned as to how he construed the statement.

Because the evidence of defamation is insufficient, the issues of special damages and actual malice need not be addressed. Plaintiff has failed to meet his burden in showing sufficient evidence of libel by defendant Prosnitz, and the trial court erred by denying defendant Prosnitz's motions for directed verdict or judgment notwithstanding the verdict.

[4] As for plaintiff's claim for slander, defendant Prosnitz argues the "trial court erred in instructing the jury that the words allegedly spoken by the defendant Prosnitz were slander per se." For that reason, defendant Prosnitz contends the trial court erred by denying his motions for a directed verdict or judgment notwithstanding the verdict on the issue of slander.

Slander is a tort distinct from libel in that slander involves an oral communication. Like libel, slander may be *per se* or *per quod*, but it cannot fall into the intermediate category where it would be susceptible to two meanings. *Tallent v. Blake*, 57 N.C. App. 249, 291 S.E. 2d 336 (1982). Slander *per se* involves an oral communication to a third person which amounts to: (1) accusations that the plaintiff committed a crime involving moral turpitude; (2) allegations that impeach the plaintiff in his or her trade, business, or profession; or (3) imputations that the plaintiff has a loathesome disease. *Morris v. Bruney*, 78 N.C. App. 668, 338 S.E. 2d 561 (1986). Defendant Prosnitz argues that none of these circumstances were present in this case. We disagree.

The statements involved in this case were that plaintiff was "a liar, deceitful, absolutely useless, and does not have a Ph.D., and was a fraud. . . ." These statements were made to Dr. Feargus O'Foghludha, a colleague of plaintiff. We hold that such statements concerning plaintiff's academic credentials amount to allegations that impeach plaintiff in his profession. As a member of Duke University's faculty and as a research scientist, plaintiff depended on his academic degree in his work. The trial court did not err by instructing the jury that such statements were slander *per se*. This argument is without merit. Therefore, the judgment awarding plaintiff $50,000 compensatory damages and $50,000 punitive damages on the jury's verdict finding defendant Prosnitz

U v. Duke University

slandered plaintiff will be affirmed. Any error committed by the court with respect to plaintiff's claim for libel was harmless since the judgment awarding plaintiff $50,000 compensatory damages and $50,000 punitive damages is supported by the verdict in the claim for slander.

Defendants' Assignment of Error No. 57 states defendant Prosnitz's contention that the trial court erred by "failing to award a new trial to the defendant, Leonard R. Prosnitz, because of a manifest disregard by the jury of the instructions of the court, excessive damages appearing to have been given under the influence of passion or prejudice, insufficiency of the evidence to justify the verdict, and error in law occurring at trial. . . ." We have reviewed the record and find there is no evidence of a manifest disregard of the instructions by the jury.

[5] As for the contention that the jury's award of damages was excessive, a motion for a new trial based on excessive damages is addressed to the discretion of the trial court and is not reviewable in the absence of abuse of discretion. *Thompson v. Kyles*, 48 N.C. App. 422, 269 S.E. 2d 231, *disc. rev. denied*, 301 N.C. 239, 282 S.E. 2d 135 (1980). We find no abuse of discretion in this case. The award of punitive damages is within the discretion of the jury, subject to the limitation that the amount may not be excessively disproportionate to the circumstances. *Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 154 S.E. 2d 344 (1967). We hold the award is not excessively disproportionate in this case.

Defendants' further contentions that the evidence is not sufficient to justify the verdict and that error in law occurred at trial are likewise without merit. We can find no evidence in the record to support either contention. Defendants' assignment of error is meritless.

Defendants next contend the trial court committed reversible error in several evidentiary rulings. Defendants group these rulings into five arguments, contending the trial court erred in the following ways: (1) in allowing plaintiff to offer evidence of opinion and reputation regarding his character and the character of witnesses; (2) in allowing plaintiff's wife to testify regarding Japanese society's view of lawsuits; (3) in prohibiting defendants from cross-examining a witness regarding a prior statement; (4) in permitting plaintiff and other witnesses to testify as to plaintiff's

background; and (5) in prohibiting defendants' witnesses from testifying regarding plaintiff and his family's background. We disagree with defendants.

[6] Evidence of the "character" of a plaintiff in a defamation action is admissible. *Sowers v. Sowers*, 87 N.C. 303 (1882); Brandis on North Carolina Evidence, Sec. 103 (1982). For that reason, proof may be made by testimony as to reputation or by testimony in the form of an opinion. G.S. 8C-1, Rule 405(a). Even if testimony concerning other witnesses' character and reputation was improperly admitted, there was no prejudice such that absent the testimony the jury would have reached a different result.

[7] Plaintiff's wife's testimony as to Japanese perception of lawsuits was properly admitted under G.S. 8C-1, Rule 701. The trial court found her opinion was rationally based on her perception and was helpful to a clear understanding of her testimony. Upon reviewing the record, we agree with the trial court.

The trial court's refusal to allow cross-examination of Dr. O'Foghludha as to a previous statement also did not amount to reversible error. Defendants did not show inconsistency in his statements, and even if there were inconsistencies, this did not amount to unduly prejudicial error.

[8] Further, plaintiff's testimony as to his background and the denial of defendants' attempts to introduce evidence regarding plaintiff's background do not amount to reversible error. It is clear in this case that both plaintiff and defendants introduced evidence concerning plaintiff's character, reputation and background. While this evidence is relevant and admissible in defamation actions, some limits to the amount of evidence must apply. We cannot say the testimony of plaintiff, however, when balanced with defendants' evidence of plaintiff's background, was unduly prejudicial. Likewise, the trial court's rulings which excluded some testimony about plaintiff excluded only a small portion of the evidence presented by defendants concerning plaintiff's background. We hold the trial court properly exercised its discretion under G.S. 8C-1, Rule 403, in excluding the testimony because its probative value was substantially outweighed by a danger of unfair prejudice. Defendants' arguments on evidentiary rulings are without merit.

[9]　Defendants finally contend the trial court erred by awarding plaintiff interest on the compensatory damages awarded for slander from the date of the commencement of the action. Because this action was begun in 1984, the former G.S. 24-5 (1983 Cum. Supp.), prior to its amendment in 1985, governs. The former statute, in pertinent part, provided that "compensatory damages in actions other than contract which are not covered by liability insurance shall bear interest from the time of the verdict until the judgment is paid and satisfied. . . ." Defendants argue now for the first time on appeal that defendant Prosnitz's insurance carrier has denied coverage and that a federal district court has declared the insurance company's interpretation of the policy is correct. None of this, however, appears in the record, and because defendants failed to raise the issue at trial, they are now precluded from raising it for the first time on appeal. *See Phelps v. Duke Power Co.*, 86 N.C. App. 455, 358 S.E. 2d 89 (1987). Thus, the judgment awarding plaintiff compensatory damages for slander with interest from the date of the commencement of the action will be affirmed.

[10]　Finally, plaintiff attempts to cross-assign error in the trial court granting a directed verdict on his abuse of process claim and in granting a directed verdict for defendant Prosnitz and Dr. Charles E. Putnam for malicious prosecution. Under Rule 10(d) of the North Carolina Rules of Appellate Procedure, an appellee may "set out exceptions to and cross-assign as error any action or omission of the trial court . . . which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. . . ." Plaintiff's purported cross-assignments show no alternative basis for upholding the judgment from which defendants appealed. Instead, they attempt to show that the trial court should have entered additional judgments in plaintiff's favor. Such issues can only be raised by appeal. *St. Clair v. Rakestraw*, 67 N.C. App. 602, 313 S.E. 2d 228, *rev'd in part on other grounds*, 313 N.C. 171, 326 S.E. 2d 19 (1984). Plaintiff has not appealed, and for that reason we do not consider the merits of his argument.

The result is in plaintiff's claim against defendant Duke University for malicious prosecution, judgment is reversed; in plaintiff's claim against defendant Leonard R. Prosnitz for libel and slander we find no error in the trial, and judgment will be af-

firmed; in plaintiff's claim against defendants Duke University and Leonard R. Prosnitz for conversion, judgment will be affirmed.

All the costs incurred in this appeal will be borne one-third by plaintiff, one-third by defendant Duke University and one-third by defendant Leonard R. Prosnitz.

Affirmed in part; no error and affirmed in part; reversed in part.

Judges WELLS and COZORT concur.